(No. 16419.—Reversed and remanded.)
MARK HARDIN, Appellee, *vs.* MARY J. WOLF *et al.* Appellants.

*Opinion filed June 18, 1925—Rehearing denied October 8, 1925.*

1. PARTITION—*when decree is final.* A decree in a partition suit which finds and declares the several interests of the parties and appoints commissioners is a final and appealable decree, whether or not the commissioners have made their report.

2. SAME—*when freehold is involved.* A freehold is involved in a partition suit where the subject matter of the suit is a freehold estate, whether the title is held in joint tenancy or tenancy in common, as the title of each co-tenant is transferred in the event partition is effected, and in the event that the real estate cannot be divided a sale follows, which transfers the estate and the title of all the co-tenants to the purchaser.

3. SAME—*partition will not be allowed in violation of an agreement.* A court of equity will not award partition where there is an agreement not to partition or where the agreement is such that to secure its performance it is necessary that partition be denied; and such an agreement may be verbal if it has been acted upon, and it need not be expressed but will be readily implied, and enforced if necessary to the protection of the parties.

4. JOINT TENANCY—*when execution of trust deed will not destroy joint tenancy.* The execution and delivery of a *bona fide* note and trust deed to a stranger by one of two joint tenants will effect a severance of the joint tenancy, but where the trust deed is

given by one joint tenant to the other without any consideration and merely for the alleged purpose of protecting the other against a transfer or incumbrance of the maker's interest it does not sever the joint tenancy.

APPEAL from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding.

DWIGHT McKAY, and WHARTON PLUMMER, for appellants.

O'BRIEN, RUTLEDGE & HAYES, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Mark Hardin on April 27, 1923, filed a bill for partition in the superior court of Cook county against Mary J. Wolf, John J. Wolf, her husband, and James E. O'Brien, in which it is alleged that on September 27, 1916, James C. Byrne, a bachelor, conveyed to Hardin and Mary J. Wolf, his daughter, as joint tenants and not as tenants in common, a certain lot in the city of Chicago; that the lot is improved by a two-story brick building, which contains a store and undertaking room on the first floor and an apartment above, occupied by Hardin and Mrs. Wolf; that they, as joint tenants, are the owners of the premises, with the right to the sole survivorship in the surviving tenant; that the undivided interest of Mrs. Wolf is subject to the lien of a trust deed to O'Brien, dated and recorded on September 28, 1916, made to secure the payment of a certain note of even date executed by Mary J. and John J. Wolf for $3500, payable to their own order and endorsed and delivered, due in ten years after its date, with interest at five per cent per annum, payable semi-annually; that Hardin and Mrs. Wolf are each entitled to an undivided one-half interest in the premises, subject to the homestead estate of the other, and that the share of Mrs. Wolf is further

318—4

subject to the interest of O'Brien as trustee. The prayer of the bill asked that the interests of the parties be declared; that commissioners be appointed to make partition; that in the event partition could not be made the premises be sold and the proceeds divided, and that the interest of Mrs. Wolf or her share of the proceeds be charged with the lien of the trust deed "and the rights of the unknown owner or owners, holder or holders of the notes secured thereby." Mary J. and John J. Wolf interposed a demurrer to the bill, and assigned as the cause therefor that the owners of the note for $3500 were necessary parties defendant. 'The demurrer was sustained.

Pursuant to leave granted, William B. O'Brien filed an intervening petition, in which he alleged that he was the legal holder and owner of the promissory note secured by the trust deed to James E. O'Brien; that he acquired title thereto from Hardin, and that no part of the interest on or the principal of the note had been paid. By his petition he admitted the allegations of the bill of complaint, submitted himself to the jurisdiction of the court and asked that his interest in the premises might be declared. On July 27, 1923, Hardin amended his bill by charging that William B. O'Brien was the legal holder and owner of the note for $3500 and making him a party defendant thereto.

Mary J. Wolf filed an answer, in which she averred, among other things, that the joint tenancy set forth in the bill of complaint was created pursuant to an agreement between her father and herself, the joint tenants; that the premises should be used and occupied by them as their home during their joint lives; that he during the remainder of his life should have her services as housekeeper; that upon the death of either the whole property should belong to the survivor, and that neither, after the vesting of the title in them in joint tenancy, should sell, convey, encumber, divide or partition the property or their interests therein, or do anything to terminate their use and occupancy of the prem-

ises during their joint lives or the vesting of the title thereto in the survivor. Mrs. Wolf further avers in her answer that her father, her husband and herself have, since the deed in joint tenancy was executed, occupied the premises as their home; that she has performed the required services as housekeeper, given her father the necessary personal care and attention, kept the premises in good repair at considerable expense, and fully performed the agreement on her part; that she has not sold, conveyed, encumbered, divided or partitioned the premises or her interest therein, nor has she suffered any judgment to be recovered against her; that she has done nothing to interfere with or terminate the use and occupancy of the premises by her father as a home or the vesting of the title in him in the event of her prior death, and that the instant suit is a violation of their agreement and an attempt to oust her from the enjoyment of the premises and to prevent her from obtaining the title thereto in case she survives her father. In her answer Mrs. Wolf then avers that after the execution of the deed in joint tenancy her father represented to her that for his protection a note and trust deed were necessary to prevent a transfer of her interest to his prejudice, and that his attorney, William B. O'Brien, had prepared a note and trust deed for that purpose; that her father requested her husband and herself to sign the note and trust deed; that the attorney made like representations, and stated that in the event of her father's prior death the note would be surrendered and the trust deed released; that pursuant to her father's request, and having implicit confidence in him and relying upon the representations made by him and his attorney concerning their purpose and necessity, she and her husband signed the note for $3500 dated September 28, 1916, and the trust deed to James E. O'Brien to secure its payment; that they received no consideration whatever therefor; that William B. O'Brien is not the holder and owner of the note and trust deed; that these instruments

are not a charge upon her interest in the property, and that they were made without any consideration and are wholly null and void. The answer concludes with the denial that Hardin is entitled to the relief sought.

John J. Wolf by his answer claims an inchoate right of dower in his wife's interest in the premises, and avers that her answer is true and that he adopts it.

William B. O'Brien also filed an answer, in which he stated that he holds and owns the promissory note for $3500 and the trust deed to James E. O'Brien which secures its payment, and that no part of the interest on or principal of the note has been paid. By his answer he admits the allegations of the amended bill of complaint, and avers that Hardin is entitled to the relief which he seeks.

Replications were filed to the several answers. The cause was referred to a master in chancery, who heard and reported the evidence with his findings and recommended a decree of partition. Objections and exceptions to the master's report were overruled and a decree of partition was entered, which, among other things, finds and declares that Hardin and Mary J. Wolf are the owners in fee simple as joint tenants of the premises in question; that the trust deed to James E. O'Brien, dated September 28, 1916, which secures the payment of the note for $3500, is a valid first lien on the interest of Mary J. Wolf; that the note has not been paid and that William B. O'Brien is the owner thereof. From that decree Mary J. and John J. Wolf, her husband, prosecute this appeal.

Before considering the merits of the instant case disposition must be made of two preliminary contentions urged by appellee. They are, first, that the decree from which the appeal is prosecuted is not a final decree; and second, that a freehold is not here involved.

In support of the first contention it is argued that there is no appealable decree in a partition suit until the commissioners appointed have made their report. By the de-

cree under review the interests of the several parties to the
suit are ascertained and declared and commissioners to make
partition are appointed. A decree which finds and declares
the several interests of the parties and appoints commission-
ers is a final and appealable decree. *Clawson* v. *Ellis,* 286
Ill. 81; *White* v. *VanPatten,* 280 id. 215; *Lantz* v. *Lantz,*
261 id. 194; *Ellguth* v. *Ellguth,* 250 id. 214.

With reference to the second contention, Mary J. Wolf
and appellee hold title to the property either in joint ten-
ancy, subject to certain conditions, or, by operation of law,
as tenants in common. If partition should be effected the
title of each co-tenant is transferred to the parcel allotted
to him, and in the event that the real estate cannot be di-
vided a sale follows, which transfers the estate and title
of all the co-tenants to the purchaser. The subject matter
of this suit is a freehold estate, and a freehold is neces-
sarily involved. *Schwartz* v. *Ritter,* 186 Ill. 209; *Wilson*
v. *Dresser,* 152 id. 387; *Bangs* v. *Brown,* 110 id. 96.

The evidence shows that appellee purchased the lot in
question, now known as 1115 Roosevelt road, Chicago, in
June, 1883. In the following year he improved the lot with
a two-story brick building, which, as remodeled, is now situ-
ated upon it. At that time appellee was married and had
six children. He resided with his family on the second
floor of the building and occupied the first floor to conduct
his undertaking business. Mary J. Wolf, appellee's daugh-
ter, was married to John J. Wolf in the year 1899. For
two or three years following their marriage they occupied
a separate home, but early in the year 1902 they moved to
appellee's apartment and have since resided there with him.
Mrs. Wolf worked for her parents and John J. Wolf was
employed by appellee to assist him in his undertaking busi-
ness. Appellee's wife had two insurance policies upon her
life, aggregating $1800, in which her daughter, Mrs. Wolf,
was the beneficiary. After her mother's death, which oc-
curred on January 17, 1905, she collected the money due on

the policies. Appellee insisted that the money so collected rightfully belonged to him and he disputed his daughter's right to retain it. She lent him the proceeds of the policies and $200 additional, making a total of $2000, for which, on October 3, 1905, he gave her his note for $2000, due in ten years after its date, with interest at three per cent per annum, payable semi-annually, and secured its payment by a trust deed on the property in question to John J. Mahoney. Subsequently, on February 27, 1906, appellee made a note for $4000, due in five years from its date, with interest at five per cent per annum, and to secure its payment executed a trust deed on the same property to the same trustee. The note and trust deed for $4000 did not represent an actual indebtedness but were executed to hinder and delay a creditor of appellee. On April 11, 1906, appellee conveyed the premises to Mrs. Wolf, subject to the two encumbrances. The consideration in this deed was stated to be $500, and for this sum Mrs. Wolf gave a note to appellee, which is still held by him, uncanceled. No interest has ever been paid upon this note. In 1916, as the result of a conference between her father and his attorney, her husband and herself, she conveyed the property to James C. Byrne, a law clerk in the office of appellee's attorney, and Byrne on the same day by a warranty deed conveyed the premises to appellee and Mrs. Wolf in joint tenancy. At that time the widening of Roosevelt road was in progress. The north forty-two feet of the property had been condemned by the city of Chicago, and the compensation to be paid for the portion taken was fixed at $6272.50. Before the city would pay the award, however, releases of the two trust deeds securing the payment of the note for $2000, dated October 3, 1905, and the note for $4000, dated February 27, 1906, were required. Such releases were filed for record on December 5, 1916, and on the following day the award was collected and deposited to the joint credit of appellee and Mrs. Wolf in Graham & Sons' Bank, in Chicago.

Mark Hardin, appellee, testified that he and his daughter, Mary J. Wolf, held title to the property as joint tenants; that he had never received any interest on the mortgage for $3500; that in another bill of complaint, which he filed in the superior court of Cook county on December 1, 1922, he alleged that he was the owner of the mortgage; that although he asked by the prayer to the bill of complaint in this suit that the interest of Mrs. Wolf might be charged with the rights of the unknown holders and owners of the note secured by the trust deed to James E. O'Brien, he was, in fact, the holder of that note when the bill was filed; that by his amendment to the bill in this suit he alleged that his attorney, William B. O'Brien, was the holder of the note but that O'Brien had paid nothing for it, and he admitted that the note and trust deed dated February 27, 1906, for $4000, were made to hinder and delay a certain creditor.

William B. O'Brien testified that he represented appellee in transactions with appellants; that he suggested that the title to the property should be placed in the names of Hardin and his daughter in joint tenancy; that appellants were not represented by a lawyer and that they relied upon him; that they stated they would follow his advice, and on September 27, 1916, deeds were accordingly made by which the title was so vested; that since the property was then worth $10,000 or $11,000 and Mrs. Wolf had stated that all she wanted was $2000 and the interest due her, he also suggested, in order fully to protect appellee's interest, that the daughter's share should be encumbered by a trust deed securing the payment of a note for $3500; that on the evening following the day the joint tenancy deed was executed, appellants, pursuant to notice given them, called at his home, where the note for $3500 and the trust deed securing its payment were executed; that he advised them to sign the note and trust deed, which, with Mrs. Wolf's claim for $2000, constituted the purchase price of a half

interest in the property; that the note and trust deed for $3500 did not recite that they were given for part of the purchase price; that he sent a bill for his services to appellants because appellee had told him that the transaction was for their benefit, and that appellants paid the bill; that he represented appellants and appellee in their negotiations with the city of Chicago to obtain payment of the award in the condemnation proceedings, and that counsel for the city required releases of the encumbrances for $2000 and $4000 before the award could be paid; that on November 22, 1916, he canceled the trust deed securing the payment of the note for $2000, dated October 3, 1905, and that in January, 1917, at the request of Mrs. Wolf, and in order that she might have evidence of that indebtedness, he drew a note, to be signed by appellee, for $2600, to include the interest and principal due on the note dated October 3, 1905, since canceled.

According to the testimony of Mary J. Wolf, the creation of the joint tenancy was suggested by her father to protect her from any trouble that might arise after his death. He requested her to remain in his home to care for him and to assist in the conduct of his business, and stated that upon his death the property would belong to her. She informed him that she was satisfied with that arrangement. Nothing was said about appellants giving a $3500 note and trust deed at the time the joint tenancy deed was executed. The note and trust deed were first mentioned on the evening of the next day, when at her father's request she, with her husband, called upon attorney O'Brien, who informed them that her father desired a mortgage on her one-half of the property for his protection against conveyances, mortgages and judgments. In answer to their inquiry O'Brien stated that it would be perfectly safe and proper for them to execute the note and trust deed, and that upon her father's death the note would be surrendered and the trust deed released. Relying upon the assurances of her father and his

attorney she and her husband signed the note and trust deed. In November, 1916, she accompanied her father to O'Brien's office. He told her that she would have to cancel her note for $2000, and release the trust deed securing it, to obtain the award made in the condemnation suit. When she asked how she would be protected by discharging the encumbrance without receiving payment, the attorney stated that the city would pay the award to her father and herself jointly. At the same time her father promised to pay the principal and interest due her out of his share of the award. Shortly thereafter the city paid the award and it was deposited to their joint account in Graham & Sons' Bank. Later her father induced her to sign a blank check upon the representation that he wished to pay a small account. He took the check and withdrew the balance from the bank. After discovering that the money had been withdrawn she informed O'Brien what her father had done and asked him how she was secured in the payment of the money due her. He wrote a promissory note for $2600, to include both principal and interest, and requested her to take it to her father for his signature. She informed her father that she had obtained the note from O'Brien and asked him to sign it, so that she would have some evidence of his indebtedness which her husband might receive after her death. Her father took the note, refused to sign it, and stated that he had endeavored for years to obtain the money and had finally succeeded.

John J. Wolf testified that when the joint tenancy deed was made nothing was said about a note or trust deed; that pursuant to appellee's request he, accompanied by his wife, called at the home of O'Brien, the attorney, on the evening of September 28, 1916, the day after the joint tenancy deed had been executed, and that O'Brien then stated that a note and trust deed had been prepared for appellee's protection and that it was perfectly safe and proper to execute them; that upon inquiry by Wolf what would happen in

case of appellee's death, O'Brien replied that it would only be necessary to have his (O'Brien's) father, James E. O'Brien, release the trust deed, and that he, the attorney, would see that it was done.

Appellee insists that by the deed in joint tenancy and the note for $3500 secured by the trust deed a sale of a one-half interest in the property to Mary J. Wolf was consummated. If these instruments effected such a sale, it is remarkable that the existing encumbrances on the property,—one for $2000 and the other for $4000, with interest accrued on each for nearly eleven years,—were not released. It was not until payment of the award made in the condemnation suit was sought that these two encumbrances were discharged. The releases were recorded December 5, 1916, and on the following day the award was paid. If the price of a one-half interest in the property was $5500, and the purchase was made by the cancellation and surrender of the note for $2000 and the execution of the mortgage for $3500, as O'Brien testified, then the accrued interest on the encumbrance for $2000, approximately $660, was ignored. If the note for $2000 was so applied then the obligation was discharged, and O'Brien would not have had occasion in January, 1917, when Mrs. Wolf called at his office, to draw a note, to be signed by appellee, as a substitute for it. If there had been an actual sale the existing encumbrances would have been released, the interest on the new mortgage would have been collected, and in all probability there would have been an accounting between them for the value of the use and occupation of the property. The conduct of the parties fails to show that they treated the deed in joint tenancy, and the trust deed which followed it, as effecting a sale of a one-half interest in the property to Mrs. Wolf.

Appellee in his bill of complaint in a former suit alleged that he was the owner of the note for $3500. He sought by the prayer of his bill in this suit to charge the share of

Mary J. Wolf with the rights of the unknown holders of the note. Later, by an amendment to the same bill, he alleged that O'Brien, his attorney, owned the note. Appellee's testimony is that, notwithstanding the prayer of his bill, he owned the note when the bill was filed but that he later transferred it to O'Brien without any consideration. O'Brien, too, testified that he paid nothing for the note and no interest was ever collected upon it. Whether appellee or his attorney holds the note and trust deed is inconsequential, for they were made without consideration and are void in the hands of either.

The execution and delivery of the note and trust deed to a stranger, if valid, would effect a severance of the joint tenancy. (*Lawler* v. *Byrne*, 252 Ill. 194.) Such a result, however, was not contemplated by any of the parties, as appears not only from the testimony but also from the allegation of the bill that appellee and Mrs. Wolf, as joint tenants, are the owners of the property, with the right to the sole survivorship in the surviving tenant. While the note and trust deed could not fully protect appellee against a transfer of Mrs. Wolf's interest in the property, yet the evidence shows that they were given for that purpose at appellee's request.

The facts and circumstances shown by the record convince us that both father and daughter intended to provide a home for themselves during their joint lives; that the property should go to the survivor, and that neither should terminate the use of the home by the other or defeat the vesting of the title to the whole in the survivor. The effect of such an arrangement necessarily is that the property should not be partitioned. A court of equity will not award partition where there is an agreement not to partition, or where the agreement is such that to secure its performance it is necessary that partition be denied. Such an agreement may be verbal if it has been acted upon, and it need not be expressed but will be readily implied, and enforced, if nec-

essary to the protection of the parties. *Arnold* v. *Arnold,* 308 Ill. 365; *Seals* v. *Treatch,* 282 id. 167; *Ingraham* v. *Mariner,* 194 id. 269; *Bissell* v. *Peirce,* 184 id. 60; *Martin* v. *Martin,* 170 id. 639; *Hill* v. *Reno,* 112 id. 154.

The decree of the superior court will be reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*