Argued at Pendleton October 28; reversed December 22, 1931

## HARRIS ET UX. *v.* HARRIS ET AL.
### (6 P. (2d) 230)

*Herbert C. Bryson,* of Walla Walla, Wash., for appellant.

*George R. Lewis,* of Pendleton (George H. Bishop, of Freewater, Peterson & Lewis, of Pendleton, S. D. Peterson, of Milton, and Raley, Raley & Warner, of Pendleton, on the brief), for respondents.

RAND, J. This is a suit by one joint devisee under the will of Higby Harris, deceased, against his codevisees for the compulsory partition of certain real property devised to them by the testator. The court granted the partition and Laura Harris, the surviving widow, has appealed.

It appears from the record that the testator left surviving him as his sole heirs and next of kin his widow and their four children, Ernest, the plaintiff, David, Martha and Mable. At the time of his death in January, 1928, the testator was seized in fee of what is designated as the home place consisting of 1,266.26 acres, and of three other tracts of land, one of 2½ acres, one of 160 acres, and one of 80 acres, and also of two lots in the city of Milton, all being situate in Umatilla county, Oregon. The will was executed on December 20, 1927, and has been probated and the property of the estate has been distributed in accordance with the directions contained in the will. So far as material, the will provides as follows:

## "I.

"I direct that all my debts and funeral expenses be fully paid and satisfied out of my personal property, as soon as conveniently can be done after my decease.

## "II.

"After payment of debts and funeral expenses, and expenses of last illness, I give, bequeath, and will to my wife Laura Harris one-half of the income from the home place, where we are now living.

## "III.

"All the rest, residue, and remainder of my property, whether personal, mixed or real property, of every kind and description, I give, devise, and bequeath unto

my children, David Harris, Ernest Harris, Martha Harris, Mable Harris, and my wife Laura Harris, share and share alike, that is to say that my son David Harris is to have one-fifth of such remainder of my estate, my son Ernest Harris is to have one-fifth of such estate; my daughter Martha Harris is to have one-fifth of said estate; and my daughter Mable Harris is to have one-fifth of said estate, and my wife the said Laura Harris is to have one-fifth of said estate, this paragraph has reference to the estate remaining over after the provision made in paragraph II hereof and expenses of administration are provided for.''

It appears that the testator owed no debts at the time of his death and that the estate has been fully administered and all the property distributed in accordance with the provisions of the will, and that subsequent thereto a deed was executed by said devisees confirming to each of them their respective rights and interests in the home place in exact accordance with the provisions contained in the will. The deed recites that:

''The intention of this conveyance is that from and after the execution thereof the said Laura Harris shall be entitled to one-half of the income for the term of her natural life from the hereinabove described lands, and the said David Harris, Ernest Harris, Martha Harris, Mable Harris and Laura Harris shall each be entitled to and hold an undivided one-fifth interest in said property, subject to such right of the said Laura Harris to one-half of the income therefrom for the term of her natural life.''

In this suit plaintiff seeks to have the home place as well as the remainder of the real property partitioned and allotted in severalty to him and to the other devisees. By her answer, Laura Harris set up her rights and interests in the home place and denied plaintiff's right to maintain the suit. The trial court, however, held that the home place was subject to partition

and allotted it in severalty among the various devisees. We are of the opinion that the court had no such power. Section 6-601, Oregon Code 1930, provides that:

"When several persons hold real property as tenants in common, in which one or more of them have an estate of inheritance, or for life or years, or when several persons hold as tenants in common a vested remainder or reversion in any real property, any one or more of them may maintain a suit for the partition of such real property, according to the respective rights of the persons interested therein, and for a sale of such property, or a part of it, if it appears that a partition can not be had without great prejudice to the owner."

Under the foregoing section, the right to have real property partitioned is not an absolute right to be exercised in all cases, for it must appear that no great prejudice will result to the owner from the partition of the property. In cases, therefore, where vested equitable rights of the owners, or some of them, will be greatly prejudiced by a partition of the property, it is the duty of the court to refuse to grant a partition of it. "Within the limits of the rule against perpetuities," says the author in 2 Page on Wills (2d Ed.), section 1023, "the law recognizes the right of the testator to dispose of the income of his property by will, and gifts of this sort are constantly upheld. If a gift of income is made to two or more, the income is to be paid in accordance with the division made by the will. Unless otherwise indicated in the will, the income is to be distributed in the same proportion as the corpus of the fund. Where testator manifests a clear intention so to do, he may give the income separate and apart from the principal. The intention to separate the income from the principal is generally manifested either by creating an express trust or by limiting the

interest to a life interest in the income only." "In the absence of a context indicating a contrary intention, a devise of the rents and profits or of the income of land passes the land itself both at law and in equity." 2 Jarman on Wills (7th Ed.), p. 1264. Here, the context shows that the testator had no intention when making a gift to the surviving widow of one-half of the income of the home place to make a gift of anything more than the income itself. The will shows that in disposing of the home place the testator first gave one-half of the income of the entire place to the surviving widow for the term of her natural life, thereby charging its payment upon the entire place. The right to receive one-half of all future income of the entire place vested in her the moment her husband died and will continue as long as she lives. Subject to the rights of the surviving widow, the testator devised the home place not in severalty but as an entirety to his devisees who, under the will, were to take and hold not as owners of parts thereof in severalty but as tenants in common of the entire place. These provisions created in the surviving widow a vested equitable right which is a charge upon the property in the nature of an equitable lien which she can enforce by a suit in equity. As pointed out in 3 Pomeroy's Eq. Jurisp. (3d Ed.), section 1244, when specific property is conveyed, devised or bequeathed, subject to or charged with the payment of debts, legacies, portions or annuities in favor of third persons given by the same instrument, an equitable lien not growing out of contract directly between the parties arises. In such case, as said by the author, "The legal title to the property vests in the grantee, devisee, or other recipient, but a lien thereon is created in favor of the beneficiary named, which can be enforced in equity."

■ In the instant case and under the particular facts involved here, what is the nature and extent of the lien? Clearly the lien must be on the entire place and not upon any particular part of it. The evidence shows that a part of this land is wheat land and a part of it is irrigable land suitable for the raising of alfalfa and garden crops, and a part is pasture land. The income from any particular part, therefore, will vary from season to season. The price of the crops to be grown thereon will vary; the wheat crop may be very profitable one year and unprofitable another year. The same is true of the pasture land and of the alfalfa crops. It is, therefore, impossible to partition this land so that the widow, by receiving a part of it, can be assured that, from the income of that part, she will derive one-half of the entire income of the entire place.

■ Again, it is very evident that if the testator had intended that the land should be divided into severalty ownerships, he would have made such division by the will. It was his to do with as he pleased and he has provided otherwise. One of his devisees is seeking to undo the provisions of the will by having this land partitioned. Having accepted the devise, he is personally bound to carry out the terms and provisions of the will so far as they affect his undivided interest in the land. If plaintiff had desired to escape his responsibility he should have refused to accept the devise. See *Brown v. Knapp,* 79 N. Y. 136, and note, 3 Pomeroy's Eq. Jurisp. (3d Ed.), section 1244. As said in 47 C. J., p. 316:

"The right to partition may be either expressly or impliedly limited and restricted, or prohibited altogether by the provisions of wills or deeds under which the parties claim; and courts will not award partition in violation of a condition or a restriction imposed

upon the estate by one through whom the one asking partition claims. Whether or not a prohibition against partition exists or whether or not the right to partition is restricted or limited depends, of course, upon the particular provisions of the will or deed subject to construction.''

■ Under the circumstances disclosed by this record and under the provisions of this particular will, the home place was not subject to partition and, since this property was partitioned in connection with the remainder of the real property, the decree cannot stand. It will, therefore be reversed and remanded for such further proceedings not inconsistent herewith as the parties to the litigation desire. The right to have the partition of the lands not included in the home place is clear. No part of the decree, however, can be affirmed because the property of the two classes has been combined in the decree. The whole decree must, therefore, be reversed.

Nothing said here is intended to convey the impression that these devisees may not alien or convey their respective interests in the home place but it can only be done by them as tenants in common of the entire place and the grantee will take as a tenant in common and must continue to hold the same as a tenant in common until the death of the surviving widow, for no interest in severalty therein can be obtained during the term of her natural life without the consent of the surviving widow.

ROSSMAN and CAMPBELL, JJ., absent.