BERNARD PEYTON *v.* HENRY H. WEHRHANE ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued April 4—decided May 5, 1939.

*Lucius F. Robinson* and *William H. Comley,* for the appellant (plaintiff).

*Arthur M. Marsh* filed a brief for the appellant (defendant Anne du Pont Peyton).

*Raymond E. Hackett,* with whom was *Walter N. Maguire,* for the appellees (defendants other than Anne du Pont Peyton).

MALTBIE, C. J.   This action seeks a construction of the will of William C. Peyton.   The plaintiff is his only son and the defendants are his widow and five men named in the will as executors and trustees.   We shall hereafter refer to the latter as the defendants. The deceased left an estate inventoried at almost $800,000, about three-fourths of which consisted of stock in two Delaware corporations, this stock representing his interest in the Standard Stoker Company, a corporation engaged in the manufacture of automatic stokers designed chiefly for use on railroad locomotives.   The development of this business had been the chief concern of the deceased's business life for many years and he had brought it to a high state of efficiency and profit.   He and his wife owned a controlling majority of the stock in the two Delaware corporations through which the business of the Stoker Company was directed and managed.   The will was executed October 29, 1934, when the deceased had his domicil in the state of New York.   He died domiciled in Connecticut, and his will was admitted to probate in the Court of Probate for the district of Greenwich. The five defendants had been directly connected with the business of the Stoker Company for some years before the death of the deceased.   The will was drafted by one of them, an attorney, in conjunction with his associates in the law firm of which he is a member. The deceased had conferred with him in connection with his testamentary plan over a period of about four years and during this time three drafts of wills were considered by the deceased before he executed the one now in question.   No letters outlining the disposition

of the income of the trust property during the life of the widow or the disposition of the principal and income after her death, which, in the will, the testator stated he intended to write, have been found. Attached to the will when it was filed for probate was a statement signed by the widow in which she gave approval to the disposition of the estate as therein provided, waived any claim or interest in it inconsistent with the provisions of the will, consented to provisions made for securing the continued direction and control of the Stoker Company, and agreed to transfer to a corporation which the will directed to be organized the stock she held representing her interest in the Stoker Company, and to receive in exchange therefor stock in the new corporation without voting power.

Without for the moment discussing the provisions of the will in detail it suffices to point out that the testator gave the residue of his estate to the defendants as trustees to hold, invest and reinvest during the life of his wife and to pay to her the income, and at her death directed the trustees to transfer the principal to themselves as individuals, stating an intention to prepare or cause to be prepared a letter outlining certain dispositions of the principal and income which would meet with his approval, but expressly disavowing any intent thereby to limit or restrain the absolute estate, ownership and freedom of disposition of the property by the defendants. The plaintiff claimed that after the termination of the life use given to the widow of the testator the defendants took the property upon a trust or trusts which failed because not sufficiently defined or in the alternative that the attempted gift to them as individuals was invalid, that therefore the property became intestate, vesting in the plaintiff and his mother, and that the five defend-

ants had no beneficial interest in it. The defendants, on the other hand, claimed that the property was given to them after the termination of the life use, to hold by absolute title, that any expression by the testator as to his desires in the matter made in the letters he intended to write would not be legally binding but merely precatory in its nature, and that the gift to them was valid. The trial court sustained the claims of the defendants and the plaintiff has appealed.

The testator had the right, of course, to give his property to a person or persons in such a way as to vest in them a complete beneficial interest, but with the hope and expectation that they would in fact use or dispose of it in accordance with his desires expressed to them in the will or otherwise. *Gilman* v. *Gilman*, 99 Conn. 598, 122 Atl. 386; *Clay* v. *Wood*, 153 N. Y. 134, 47 N. E. 274. Whether this is the result of the provisions of his will, or, on the other hand, the gift to the defendants did not vest in them a beneficial interest but they took the property subject to a trust or trusts inadequately declared and hence ineffective, is to be determined by the intent of the testator as it appears from the language of the will. *Mitchell* v. *Reeves*, 123 Conn. 549, 556, 196 Atl. 785. The controlling effect of such an intent applies with reference to the question whether expressions of hope, expectation, desire, and the like, on the part of a testator create a trust or are merely precatory in their nature; " 'in order to create a trust, it must appear that the words were intended by the testator to be imperative; and when property is given absolutely and without restriction, a trust is not lightly to be imposed, upon mere words of recommendation or confidence.' " *Loomis Institute* v. *Healy*, 98 Conn. 102, 114, 120 Atl. 291; *Hughes* v. *Fitzgerald*, 78 Conn. 4, 7, 60 Atl. 694.

There is also a rule of construction particularly applicable in the case before us, as will later appear. An absolute gift will be cut down by subsequent provisions indicating that a more limited estate was intended only "when the lesser estate is expressed in positive terms and in language which is unambiguous and incapable of any but one meaning." *Hull* v. *Hull*, 101 Conn. 481, 486, 126 Atl. 699; *Scanlin* v. *Peterson*, 105 Conn. 308, 313, 135 Atl. 394. This rule applies where the question is whether subsequent words indicating a desire on the part of the testator that property first given absolutely shall be used or disposed of in a certain way are intended to create a legal obligation or are merely precatory in their effect. *Loomis Institute* v. *Healy*, supra; *Clay* v. *Wood*, supra, 140; *Tillman* v. *Ogren*, 227 N. Y. 495, 125 N. E. 821.

The will before us is peculiar in the phraseology of its various provisions and while counsel in their able briefs have cited numerous cases from other jurisdictions the provisions of the wills involved for the most part differ so far from those in the one before us that the decisions afford little help, and a discussion of them would serve no purpose. Of all the cases cited, the two most nearly resembling the situation before us are *Matter of Megrue*, 135 Misc. (N. Y.) 16, 237 N. Y. S. 523, a decision of a surrogate, affirmed without opinion 229 N. Y. App. Div. 711, 254 N. Y. 638, 173 N. E. 900, and *Matter of Murray*, 124 App. Div. (N. Y.) 548. In the former the testatrix bequeathed the residue of her personal and household effects to "my executors hereinafter named, to be distributed or disposed of by them in such manner as they in their sole discretion shall deem best. It is my wish and desire that my said executors follow out as near as possible the special instructions contained in a letter which I shall deliver to them before my death." It

was held that no trust was intended to be created, the expressions of desire by the testatrix were merely precatory and that the executors took the property as individuals. In the latter case the bequest of the residuary estate was to one Murray, "requesting that he make such distribution of the same or any portion thereof, as I shall indicate by memorandum, written direction or otherwise." And it was held (p. 552) that Murray took the property absolutely, the testatrix merely trusting him to carry into effect any direction she might see fit to make. We quote, as particularly applicable here, from the opinion of the New York Court of Appeals in *Matter of Hayes,* 263 N. Y. 219, 227, 188 N. E. 716, in construing a gift of the residue of an estate to a named person "to use at his discretion in promoting the ends of justice." "It is earnestly contended by respondents that the fact that the donee, if the gift be not held to have been intended as a trust, could disregard the wish of the testatrix and keep the gift as his own, should lead the court to hold that a trust was intended. The argument does not constitute a legal reason why the words should be held to have been used with the intent to create a trust. Testatrix was the absolute owner of the property. She could give it in any way she wished. If she was content to give it in reliance upon the discretion of the donee, she had a right to do so."

Turning to the case before us, we quote the relevant provisions of the will in the footnote.[1] If for the

---

[1] "THIRD: All the residue of my estate of every kind I give, devise and bequeath to my Trustees, hereinafter appointed, in trust, during the life of my wife, ANNE duPONT PEYTON, to be held, invested and reinvested by my said Trustees, and they shall receive the income thereof, and shall pay over said net income to my wife, ANNE duPONT PEYTON, or upon her order, during her life, payment to be made annually, semi-annually or quarterly, as said Trustees may determine.

moment we confine our attention to the fourth article
and the first paragraph of the fifth article of the will,

Upon the death of my said wife, ANNE duPONT PEYTON, my
said Trustees shall transfer and pay over the entire principal of
said trust to themselves, as individuals, to have and to hold unto
them as joint tenants and not severally nor as tenants in common,
with the right of survivorship expressly vested in said joint ten-
ants. Acceptance by said Trustees, as individuals, of the remainder
after the trust herein provided, shall be deemed an agreement among
them to hold such remainder without severance of the joint ten-
ancy to the end that it may be administered as a unit by them and
their survivors only.

FOURTH: It is my intention to prepare and cause to be de-
livered after my death, to my wife, ANNE duPONT PEYTON, a
letter which shall outline in such detail as may be feasible, certain
dispositions of the income of the said trust property during the
life of my said wife, which I recommend to my said wife, as dis-
positions of said income which would meet with my approval, under
the circumstances existing at the time said letter is written. It is
not my intention, however, that the absolute freedom of disposi-
tion by my said wife of the income accruing to her under the trust
herein created, shall be in any wise limited or restrained by the
terms of said letter. It is likewise my intention to prepare and
cause to be delivered to my said Trustees a letter which shall out-
line in such detail as may be feasible, certain dispositions of the
principal and income of said property after the death of my wife,
when my said Trustees take said property in their own right as
joint tenants, as dispositions of income and principal which would
meet with my approval, under the circumstances existing at the
time said letter is written. Again, however, it is not my intention
that the absolute estate and ownership and freedom of disposition
by said joint tenants of the principal or income of said property
shall be in any wise legally limited or restrained by the terms of
said letter. I have complete confidence that my said wife and the
individuals hereinafter named as Trustees, will desire to make such
disposition of said income and principal as I myself might desire
to make, if I were still living, under the circumstances from time
to time existing, and I have confidence in their discretion in modify-
ing or abandoning any suggestions I may have made, if circum-
stances have so changed as to render my suggestions unwise or
impracticable, and I therefore have no desire to limit or restrain
in any manner their absolute ownership and power of disposition.

FIFTH: In order that the reasons for the disposition of my
estate herein made, may be clearly understood, it is desirable that
I indicate in this my Last Will and Testament the considerations

we cannot escape the conviction that they express an intention on the part of the testator that at the death

entering into the disposition of my estate herein provided. A large part of my personal estate consists of my interest in The Standard Stoker Company, Inc., a Delaware corporation, an enterprise to the development of which I have devoted much of my time for some years past. My interest in The Standard Stoker Company, Inc., is represented by ownership of stock in Peyton-duPont Securities Company, a Delaware corporation which owns all the stock of The Standard Stoker Company, Inc., and of stock in Peyton-duPont, Inc., a Delaware corporation which has voting control of Peyton-duPont Securities Company. The members of my immediate family neither need nor desire financial provision for them in the disposition of my estate. It is therefore my wish to so dispose of my interests as to leave the control and direction of The Standard Stoker Company, Inc., in the hands of those who have been associated with me in its development, and, at the same time, to evidence to those with whom I have been so associated my confidence in them and my appreciation of their cooperation with me in the development of the enterprise.

\*  \*  \*  \*  \*  \*  \*  \*

In order that complete control of The Standard Stoker Company, Inc., shall be secured to my Executors and Trustees, and the plan hereinbefore set forth made effective, my said wife, ANNE duPONT PEYTON, has agreed, by a writing filed with this my Will, upon the assurance of which this Will is executed, to transfer to said new corporation, to be organized as above provided, as soon as may be after my death, any and all stock which she may then hold in Peyton-duPont Securities Company and Peyton-duPont, Inc., and accept in exchange therefor stock in said new corporation, entitling her to a pro rata interest in the earnings and assets of said new corporation, but without voting power, in order that the effective control and direction of The Standard Stoker Company, Inc., may be vested in the persons hereinafter named by me as Executors and Trustees, in their capacity as directors of the corporation so to be formed by them.

Nothing herein contained is intended or should be construed to limit the discretion of my said Executors and Trustees in the event they shall deem it wise to dispose of all or any of the stock in Peyton-duPont, Inc. and/or Peyton-duPont Securities Company and/or the stock of the proposed new corporation to be organized pursuant to the provisions of this paragraph FIFTH of this my Last Will and Testament, prior to the termination of the trusts herein constituted.

SIXTH: Section 1. The Trustees of the several trusts of my

of his wife the defendants should take the property by absolute title, and that while he did intend to leave

residuary estate shall have power, in their absolute discretion, from time to time during the continuance of such trusts, to sell and convey any property, real or personal, forming a portion of the trust fund, and to invest the proceeds of any such sale or sales and any other funds from time to time belonging to the trusts, in the purchase of real estate . . . ; and generally in such manner as the said Trustees shall in their absolute discretion deem proper, it being the true intent and meaning hereof that the said Trustees shall, as respects the investment of each trust fund have and exercise all the same powers as are or may be lawfully exercised by individuals acting in their own right, without regard to the restrictions placed by law upon trustees. . . .

Section 2. My Executors and my said Trustees, respectively, shall have power in their discretion to vote, in person or by proxy upon all stocks or other securities held by them; . . .

Section 3. In dividing my residuary estate, or any trust fund held under this will, into shares, my Executors or my said Trustees, as the case may be, may, in their discretion, allot to any share any specific security or securities, or other property belonging to my estate or to such trust fund, real or personal, or any undivided interest therein. . . .

Section 4. My said Trustees, in the administration of any of such trusts, may appoint and remove all such attorneys, agents and clerks as they may deem necessary and proper, and out of the income of the trust fund shall pay all such office rent and other expenses as they shall determine to be reasonable.

Section 5. No bond or other security shall ever be required of any of the Trustees by this Will appointed, nor shall any Trustee ever be liable for the act or default of his co-trustee nor for any depreciation in value of the trust fund, or for any error in judgment, but each shall be liable only for his own act or default and for such losses only as shall be occasioned by his own willful wrongdoing or gross negligence.

Section 6. Any Trustee appointed by this Will may resign from any trust by filing with his co-trustee a written instrument of resignation. . . .

\* \* \* \* \* \* \* \*

SEVENTH: I appoint HENRY H. WEHRHANE, CLIFTON V. EDWARDS, NEVIL FORD, E. ARCHER TURNER and ROBERT E. COULSON, the Executors of this Will and the Trustees of the trusts herein created. I direct that no security be required of any of said Executors or Trustees in either capacity for any cause whatever. In the event of the death of any of my said Ex-

a letter in which he would outline certain dispositions of the principal and income which he hoped and expected that they would follow, so far as applicable to the circumstances, he did not intend that this should be legally binding upon them. Thus the testator directed that the property should be transferred to them "as individuals to have and to hold unto them as joint tenants" and that acceptance by them "as individuals" should have a certain result. In stating his intention to prepare and cause to be delivered to them a letter outlining certain dispositions of the property after the death of his wife he refers to the time when the trustees would take the property "in their own right as joint tenants." Thereafter, with reference to the letter, he specifically states that it was not his intention "that the absolute estate and ownership and freedom of disposition by said joint tenants of the principal or income of said property shall be in any wise legally limited or restrained by the terms of said letter," and then he proceeds to state his complete confidence that the "individuals hereinafter named as trustees, will desire to make such disposition of said income and principal as I myself might desire to make, if I were still living, under the circumstances from time to time existing, and I have confidence in their discretion in modifying or abandoning any suggestions I may have made, if circumstances have so changed as to render my suggestions unwise or impracticable, and I have therefore no desire to limit or restrain in any manner their absolute ownership and power of disposition."

Aside from the language of these provisions several

ecutors or Trustees after my death, any and all powers herein conferred upon my Executors or upon my Trustees, respectively, may be exercised by such of them as qualify and survive from time to time."

matters in this portion of the will are peculiarly significant in support of the intent we have suggested. There is a sharp contrast between the precise and technical language used in creating the trust for the life of the testator's wife and the uncertain and doubtful language relied on by the plaintiff as expressing an intent to establish a trust of the remainder interest. The testator's statement of his complete confidence in "the individuals hereinafter named as trustees" instead of an expression of his confidence in them as trustees is the clearest indication that he did not look upon them as taking the property in the latter capacity after his wife's death. Very evidently in the mind of the testator the effect to be accorded the two letters, one concerning the disposition of income by his widow during her life use and the other concerning the disposition of the principal and income after her death was to be the same; yet it cannot reasonably be maintained that the one concerning the income during the life use was anything more than an expression of an intent to make known a desire on his part which would not be in any way legally binding upon her. Again, the repetition by the testator of the statement that the dispositions he intended to outline in the letters were those which would meet his approval, "under the circumstances existing at the time said letter is written" conveys a strong suggestion that they were in no sense to be binding upon the defendants; for by the very words of the will a change in circumstances might render them inapplicable and justify a disregard of their provisions. It is also noteworthy that the testator should deem it necessary to explain the reason for the gift, putting on one side the fact that his immediate family neither needed nor desired financial provision for them and, on the other, his desire so to dispose of his property as to evidence his confidence

in the defendants and his appreciation of their co-operation with him in the development of the enterprise upon which he had been engaged. Such reference as he made to the letters he intended to write in the future would not make them effective as testamentary provisions, either under our law or that of New York; *Bryan's Appeal,* 77 Conn. 240, 58 Atl. 748; *Bryan* v. *Bigelow,* 77 Conn. 604, 612, 60 Atl. 266; *Hatheway* v. *Smith,* 79 Conn. 506, 519, 65 Atl. 1058; *Booth* v. *Baptist Church of Christ,* 126 N. Y. 215, 247, 28 N. E. 238; *Matter of Rausch,* 258 N. Y. 327, 331, 179 N. E. 755; and it can hardly be assumed that he intended to establish a trust by the provisions which would be wholly ineffective to accomplish such a purpose.

The plaintiff points to the peculiar nature of the title of the defendants to the estate which the testator sought to create. The will provides that at the termination of the life use the property should be transferred to them "as joint tenants and not severally nor as tenants in common, with the right of survivorship expressly vested in said joint tenants," and that acceptance by them should be an agreement among them to hold the property without severance of the joint tenancy "to the end that it may be administered as a unit by them and their survivors only." We shall later discuss the effect and validity of this paragraph of the will. We are seeking now only the intent of the testator. He states his purpose in making this peculiar provision to be that the property should be administered as a unit by the defendants and their survivors only. He plainly desired that the Stoker Company should in the future be managed and controlled by the five defendants or the survivors of them, working together, and he did not want them, through the disposition of their interests in the residuary estate, to bring into the group of owners another per-

son or persons not known to and trusted by him. This he sought to accomplish by providing that no one of them should separate his interest from that of the rest. As reasons why the testator could not reasonably be held to have intended to give the property to the defendants merely in the hope and confidence that they would carry out the desires he might express in the letter he intended to write, the plaintiff points to certain legal incidents which might arise out of the peculiar title to the property he attempted to create and to the fact that the effect of their carrying out wishes he might express as to the distribution of the property after the death of his widow might greatly increase the burden of taxation imposed upon his estate, but consideration of these matters introduces elements into the situation of too speculative a nature to have much weight in the determination of his intent.

The only serious question which arises as to the testator's intention grows out of the references, in the last line of the fifth article, to "the trusts herein constituted" and in the sixth and seventh to several trusts and the making of provisions which would be apt to the control of such trusts coming into existence after the death of the widow. Two explanations of these provisions have considerable plausibility. The mere reading of the language used suggests that they were taken from some standard form, without regard to the rather peculiar nature of the interests sought to be created in this will; thus, the provisions that "any trustee appointed by this will" might resign from any trust and that in the event of the death of any of the trustees the powers conferred might be exercised by such trustees as should qualify and survive from time to time, hardly fit into the scheme of the peculiar estate which vested in the defendants. Again, it may

well have been in the mind of the testator that in the letters he expected to leave he intended to request the trustees to set up various trusts. But whether or not these explanations are adequate, the fact remains that in the earlier part of the will the testator clearly has made an absolute gift to the five defendants; any inference that he intended only a gift in trust would be merely an implication from the later provisions; and the case is one for the application of the principle, previously stated, that an absolute gift will be cut down by subsequent provisions indicating that a more limited estate is intended only when the later estate is expressed in positive terms and language unambiguous and incapable of any but one meaning.

We therefore conclude that the defendants, at the termination of the life use, take the property as individuals and not as trustees. We recognize that such a disposition of the estate makes it possible that the natural objects of the testator's bounty, his widow and son, can be excluded in whole or in part from participating in it. But he trusted the defendants voluntarily to follow any directions he might leave by letter, and although he left none, there undoubtedly rests upon them a moral obligation to carry out his wishes so far as they are acquainted with them, and particularly as he may have expressed them in the course of the instructions he gave to one of them for the drafting of his will. The trial court, from its observation of the defendants, stated its belief that had the testator left a letter they would have followed the directions contained in it, very aptly adding: "And who knows now but that they will give it to such persons or charities as they may think he would desire? But this is beside the question, for he gave it to them absolutely, and we are governed by the words of the will."

It remains to consider the nature of the estate vested in them. The will provides that the property is to be transferred to them "as individuals, to have and to hold unto them as joint tenants and not severally nor as tenants in common, with the right of suvivorship expressly vested in said tenants. Acceptance by said trustees, as individuals, of the remainder after the trusts herein provided, shall be deemed an agreement among them to hold such remainder without severance from the joint tenancy to the end that it may be administered as a unit by them and their survivors only." [This unmistakably expresses an intent that the defendants should take the estate as joint tenants with right of survivorship. Such an estate is not favored in this jurisdiction, but where the intent to create it is plainly manifested by the terms of a will we give effect to it.] *Houghton* v. *Brantingham,* 86 Conn. 630, 636, 86 Atl. 664; *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 317, 130 Atl. 483; *Blodgett* v. *Union & New Haven Trust Co.,* 111 Conn. 165, 168, 149 Atl. 790. [An incident of such an estate is that it may be severed by a voluntary conveyance of his interest by one of the tenants, by partition, or by appropriation under process of law of the interest of a tenant to satisfy his debts.] 1 Tiffany, Real Property (2d Ed.) p. 637; 14 Am. Jur., p. 86.

[The testator did not seek directly to impose upon the estate he created a prohibition against the alienation of his interest by any of the defendants. He left the matter of the prevention of a severance to agreement between them. He had the right to place any legal condition upon his gift and if the defendants accepted, that condition would become binding upon them.] *Lyme High School Asso.* v. *Alling, Attorney General,* 113 Conn. 200, 205, 154 Atl. 439; *Harris* v. *Harris,* 138 Ore. 243, 248, 6 Pac. (2d) 230. Had he pro-

vided that as a condition of their receiving the property they should agree among themselves that no one of them should sever his interests, they could not accept the property unless they made such an agreement, at least unless it would be in violation of law. What he did amounted to the same thing; upon their accepting the fund an agreement not to sever would be implied in fact from their act in so doing. An agreement by joint tenants that they will not sever the estate does not affect the legal title to the property but is binding only upon them personally, and it would not destroy the right of creditors of any of them to reach their interests any further than would any agreement of an owner of property with reference to the disposition of the title to it. In such a situation the rule stated by us in *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 278, 135 Atl. 555, that one may not grant or devise to another an estate with a fixed legal incident and at the same time curtail him in the enjoyment of that incident would not in any event apply.

It remains to consider the claim of the plaintiff that the acceptance of the gift by the defendants upon this condition and the consequent implied agreement that they would not sever their interests was in violation of the rules forbidding restraints upon alienation. It is to be noted that the interests which are not to be severed are interests in the fund as a whole. The testator imposed no restraint upon the alienability of any particular property constituting the fund; indeed, he expressly provided that even during the trust for the life of the widow the stock of the Delaware corporations through which the Stoker Company was controlled might be disposed of by the trustees in their discretion. As regards any particular property forming a part of the fund, the effect of the will and the

agreement would be only to prevent its sale except by the defendants as co-owners. It was at most a partial restraint upon alienation.

It is generally held that a condition imposed by a testator that property bequeathed or devised shall not be partitioned after his death or any agreement between joint owners that they will not partition the property for some reasonable period is not invalid as constituting an illegal restraint upon alienation, and in a number of cases where this has been held there was a prohibition, express or implied, against the alienation of his interest by one of the joint owners, although this feature of the situation was not particularly discussed. *Hunt* v. *Wright*, 47 N. H. 396, 399; *Hill* v. *Jones*, 65 Ala. 214, 222; *Daubman* v. *Daubman*, 353 Ill. 69, 73, 186 N. E. 520; *Hardin* v. *Wolf*, 318 Ill. 48, 59, 148 N. E. 868; *Peterson* v. *Damoude*, 98 Neb. 370, 371, 152 N. W. 786; *Greene* v. *Stadiem*, 198 N. C. 445, 447, 152 S. E. 398; *Porter* v. *Tracey*, 179 Iowa 1295, 1300, 162 N. W. 800; *Harris* v. *Harris*, 138 Ore. 243, 248, 6 Pac. (2d) 230, 85 A. L. R. 1318, and note, p. 1321; Gray, Restraints on Alienation (2d Ed.) § 30; 2 Simes, Future Interests, § 449. Professor Simes states that the rule against restraints on alienation has for its purpose the prevention of results whereby assets may become frozen and productive property be rendered useless when the person in whom its ownership is inalienably vested cannot use it himself to the general advantage. 2 Simes, Op. Cit., § 444. Although he interprets the decisions as supporting a rather drastic rule, he points out that the purpose to be served is often an important consideration in determining its application; Op. Cit., § 452; and an illustration of this is found in the fact that Agreements restricting the sale of stock in corporations made to assure a continuous and har-

monious administration of the property are sustained as serving rather than interfering with its beneficial use, Op. Cit., § 472; and see *Longyear* v. *Hardman,* 219 Mass. 405, 408, 106 N. E. 1012; *Williams* v. *Montgomery,* 148 N. Y. 519, 526, 43 N. E. 57. Chief Judge Bond, in his dissenting opinion in *Northwest Real Estate Co.* v. *Serio,* 156 Md. 229, 237, 144 Atl. 245, ably expresses and learnedly illustrates the scope of the rule against restraints, stating that it did not in his opinion apply in the case before the court, and saying: "But those detrimental consequences do not exist here. And if they do not exist, why should the law be taking a stand to resist them, even when by doing so it denies to parties the right to make an agreement which may in fact redound to the public advantage? Public policy, or a policy of the courts looking to the public interest, is a stand with relation to conditions as they exist, and arises from those conditions, or it is without purpose or justification."

In this instance the restraint resulting from an agreement among the defendants not to sever their interests in the fund would be calculated to secure a skilled and harmonious conduct of the enterprise; it could not extend beyond a life or lives in being, which we have held to be the limit beyond which, even when incident to a trust, restraints on alienation cannot extend; *Colonial Trust Co.* v. *Brown,* supra, 279; and at most it went no farther than to restrain the alienation of particular property except as the defendants might as joint owners agree to its disposition. The agreement against the severance of the interests of the defendants is not invalid as offensive to public policy.

There is no error.

In this opinion the other judges concurred.