[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: COURT TRIAL
Plaintiff real estate appraiser sued defendant attorney for the reasonable value of appraisal services rendered regarding property in New Haven known as the Yale Brewery.
In a two count complaint, plaintiff alleged that he entered into a contract with defendant whereby defendant agreed to pay for his appraisal work. Each count is exactly the same except that the term "simple contract" is used in the first count and "implied contract" is used in the second. The contract was allegedly formed by way of letters and conversations between the parties during the time period September 26, 1978 to October 1, 1978.
By way of special defense, defendant claimed that he was acting on behalf of a principal (the owner) and never obligated himself personally.
Plaintiff testified that he received a call from defendant in September 1978 asking him to appraise property owned by the estate of W.C. McAviney which had been taken by the city. Defendant wanted the appraisal in connection with an appeal from the taking. Plaintiff testified to no promise to pay by defendant. In fact, he testified that no financial arrangements were made during the conversation and the defendant did not say who was to be billed for the services. Plaintiff rested on his testimony and exhibits put in evidence.
Justin Frechette was the only witness for the defense. He testified that he had once managed the subject property and CT Page 3439 suggested that plaintiff be retained. He stated that he called plaintiff from defendant's office some time in September of 1978 and told plaintiff that defendant was to handle the legal work and others would pay for the appraisal.
Two letters were submitted in support of plaintiff's contract claim. The first was dated September 26, 1978 (exhibit A).and references the Estate of W.L. McAviney as defendant's client. In the one sentence letter, defendant inquired:
 Would you be kind enough to be in touch with me concerning the above appellants from the statement of compensation retaining your services?
The second letter to plaintiff from defendant was dated September 29, 1978 (exhibit B) and stated:
 I am enclosing the property map given to me by the New Haven Redevelopment Agency. The McAviney property is circled in red, and, confirming our telephone conversation, I would appreciate your making a preliminary inspection of it, and I would like to see if we can work out the financial details of your representing the estate. (Emphasis supplied.)
The other exhibits are documents regarding events which occurred after the claimed contract was formed. To the extent that they shed any light on plaintiff's claim of an implied in fact contract[1], they buttress defendant's claim that he was acting only in a representative capacity. Exhibit P is a letter from defendant to the plaintiff dated November 13, 1978 transmitting a $500.00 retainer fee by defendant's trustee check. Exhibit F is a letter from plaintiff to defendant dated January 25, 1980, extolling defendant and others as "fine people" and stating that ". . . it is obvious that funds are controlled by others." Plaintiff went on to state in that letter:
 To reinstate action on this job, it will be necessary for you to advise that you have funds available in your own trust account for payment to the writer. . . (Emphasis supplied.)
In response to that letter, defendant sent a letter to plaintiff dated January 28, 1980 (exhibit G) explaining defendant's embarrassment in seeking funds from others to pay and stating: CT Page 3440
 I ask you to rely upon my representation that the additional $4,000.00 will be guaranteed by me — win, lose, or draw.[2]
Defendant's use of a trustee check to pay the retainer and plaintiff's demand that sufficient funds be set aside in defendant's trust account to pay him are consistent with defendant's claim that he was merely acting for a principal. Lawyers are prohibited from using clients funds to pay personal obligations. Rules of Professional Conduct, Rule 1.15, P.B 27A. Why would plaintiff want trust (client's) funds set aside if he indeed had a contract obligating defendant attorney to pay his fee? Why would defendant "guarantee" an obligation that was already his? These letters clearly indicate that neither party thought defendant was personally obligated to pay.
An agent is not personally liable for a contract made on behalf of a disclosed principal whom he has the power to bind. Restatement of Agency 2d, section 328. Connecticut adopted this restatement position in Whitlock's Inc. v. Manley, 125 Conn. 434
(1938), and followed it in Castaldo v. D'Ermo, 140 Conn. 88
(1953), and Scribner v. O'Brien, Inc., 169 Conn. 389 (1975).
Defendant's principal was fully disclosed from the outset of the parties dealings. Handbook of the Law of Agency, Seaver, states at page 212:
 The burden of proof is, of course, upon the one who seeks to hold the agent as a party. In the absence of evidence otherwise, however, there is an inference . . . that an agent for a fully disclosed principal is not [a party].
Plaintiff has, quite simply, failed to carry his burden of proof. The evidence is clear that plaintiff rendered appraisal services and was not fully paid. That is a regrettable circumstance. For whatever reason(s), plaintiff chose not to pursue the apparently liable property owner upon whom the benefits of the appraisal were conferred. Plaintiff must suffer this loss as the court cannot impose liability on the defendant where none has been proven.
For the foregoing reasons, judgment enters in favor of the defendant.
E. EUGENE SPEAR, JUDGE