ELSIE M. SEEBERGER, Appellee, vs. CHARLES H. SEEBERGER
et al.—(CHARLES H. SEEBERGER, Appellant.)

*Opinion filed February 16, 1927—Rehearing denied April 6, 1927.*

1. DEEDS—*general rule as to when fiduciary relation exists.* A
fiduciary relation exists in all cases in which influence has been
acquired and abused, and if confidence is, in fact, reposed by one
party and accepted by the other the relation is fiduciary, and equity
will regard dealings between the parties according to the rules
which apply to such relation, regardless of the origin of the con-
fidence, whether it be moral, social, domestic or purely personal.

2. SAME—*when deeds will be set aside in partition suit.* Where
the evidence shows that the grantee in quit-claim deeds occupied
a fiduciary relation towards the grantor, who was his mother, and
that he prepared the deeds and induced her to sign the same,
they will be set aside in a partition suit filed by one of the heirs
after the grantor's death, where the evidence shows that the deeds
were executed during an illness of the grantor for the purpose of
avoiding probate proceedings in the event of her death, although
she lived for several years thereafter and allowed the deeds to
remain in the grantee's possession.

3. LACHES—*when complainant in partition suit is not guilty of
laches.* A complainant in a partition suit cannot be charged with
*laches* in respect to certain unrecorded deeds, where she testifies
that she did not know of the existence of the deeds until the par-
tition suit was brought.

4. PARTITION—*when solicitor's fees cannot be taxed as costs.*
The complainant in a partition suit is not entitled to have solicitor's
fees taxed as costs where the defense interposed is of a substan-
tial character, is made in good faith and is hostile to the complain-
ant's interest.

APPEAL from the Circuit Court of Cook county; the
Hon. FRANCIS S. WILSON, Judge, presiding.

HOYNE, O'CONNOR & RUBINKAM, for appellant.

SAMUEL B. KING, for appellee; CHARLES M. HAFT, for
Martha Seeberger.

Mr. JUSTICE HEARD delivered the opinion of the court:

Barbara Seeberger, aged eighty or eighty-one years, died intestate November 8, 1918, leaving her surviving as her only heirs-at-law, Charles H., Albert G. and Emory Seeberger, her sons, and Elsie M. and Martha Seeberger, daughters and only heirs-at-law of George Seeberger, a deceased son of Barbara. August 26, 1920, Elsie M. Seeberger filed in the circuit court of Cook county her bill for the partition of certain real estate in Chicago and Kankakee, alleging that Barbara died seized thereof. The bill made the other heirs and Gordon Ramsay, administrator of the estate of Barbara, defendants to the bill and prayed for an accounting of the rents collected by Charles Seeberger. To the bill Charles H. and Albert G. Seeberger filed their joint and several answers, in which they denied that Barbara died seized of the property described in the bill, and averred that on the 15th day of July, 1911, she by her quit-claim deed conveyed to Charles all her interest in the Kankakee property, and on the 2d day of November, 1911, by her quit-claim deed conveyed to him all her interest in the premises described in the bill in Cook county. They denied that Charles collected any rents except as owner of said premises. Emory Seeberger and Gordon Ramsay, administrator, answered, neither admitting nor denying the allegations of the bill. Martha Seeberger answered, substantially admitting the allegations of the bill. On February 16, 1922, complainant filed amendments to her bill, by which she alleged that neither of the two deeds to Charles was filed for record in the county in which either of the parcels of land was situated, prior to the filing of the bill of complaint, and that if such deed or deeds was or were ever signed by Barbara the same were never delivered and never became her deed or deeds. The amended bill also alleged that there was no consideration for such deeds, and that if given at all they were given as

the result of the influence which Charles possessed by reason of his confidential relation to his mother and by his undue influence. By the prayer of the amended bill the court was asked to decree these deeds to be null and void. Charles H. and Albert G. Seeberger filed their joint and several answers to the amended bill, denying that the deeds were obtained by undue influence and setting up *laches* as a defense to the amended bill. Replications to the answers were filed and the cause was heard in open court, resulting in a decree in favor of complainant, setting aside the two deeds in question, from which decree Charles H. Seeberger has appealed to this court.

It is contended by appellant that the decree is not supported by the evidence in the case. It appears from the evidence that Barbara Seeberger, a widow, who prior to making the deeds was the owner of the premises in question, was a business woman. For many years she kept a dry-goods store at 3138 South State street, which is one of the parcels of property involved herein, and herself managed and carried on her business there. She was a woman of strong character and decided opinions in relation to her affairs. The uncontradicted evidence shows that she was capable of managing her own business and attended personally to the collection of the rents and the leasing of her property, with the assistance of her sons Charles and Albert. Until her death she lived on the second floor of the building in which her store was located. Her son Albert lived with her when in the city. He was a traveling man but was home every week. Charles, the grantee in the deeds, lived with his family in a different section of the city of Chicago. On October 25, 1911, she was assaulted in her store and so badly bruised by a man or men who robbed her that she was taken to Mercy Hospital, where she remained several weeks. She was at first unconscious but did not continue in that condition very long. She recognized her sons and friends on the second day and was

able to talk to them, although at first it was difficult for her to do so, owing to the injury to her face. Her life was considered in imminent danger for a few days, but she was in possession of her mental faculties though weakened by great pain and suffering. The undisputed evidence, some of it adduced by appellant himself, shows that prior to the time she went to the hospital appellant at times assisted her in the management of her real estate and at times gave orders for making repairs upon the premises in question and paid for a portion of such repairs for his mother; that he consulted frequently with Dickenson, who had a real estate office within two doors of the place where Barbara lived, with reference to her rental and insurance matters, of which Dickenson had charge. While one of the deeds in question bears the date of July 15, 1911, and the other bears the date of November 2, 1911, the evidence shows that they were both signed by Barbara at the same time, about the second or fourth of November, 1911. The record contains undisputed testimony of witnesses that on the morning of the day upon which the deeds were signed by Barbara, appellant appeared with the deeds already prepared by him and in part in his own handwriting and requested Dickenson to go with him to his mother to get her signature to the deeds; that Dickenson asked him if it was all right with the other children, and that appellant replied it was all right and that the deeds were only to be used in case his mother died, and said, "I am just taking this caution in case mother dies in this accident;" that appellant and Dickenson then went to the hospital and that after some time Dickenson returned with the deeds signed; that appellant stated a day or two later, when discussing the matter in the real estate office, that he didn't think at first his mother would sign the deeds and that he was glad she did, as he could sell the property in case she died.

While there is some evidence in the record tending to show that after November 4, 1911, appellant assumed en-

tire control and management of the property, there is also evidence that shows that after November 4, 1911, Barbara Seeberger paid all the taxes assessed against the property from 1911 until the time of her death; that she made leases of the property in her own name, some of them in the presence of appellant, collected the rents and served five-day rent-demand notices on delinquent tenants who occupied portions of the premises in question, signing her own name to the notices; that she caused policies of fire insurance upon the property to be taken out in her name; that she continued to direct the making of repairs upon the property and paid for such repairs, and that she herself continued to live in the premises and occupy the store, which she kept open at times. While there is evidence in the record that after her discharge from the hospital she admitted having signed the deeds, such admission was generally coupled with the statement that the deeds were made to avoid probate proceedings and that Charles was to divide the property among her heirs. Dickenson, the notary who took her acknowledgment to the deeds, died before the trial, and there is no evidence as to what took place between appellant and his mother at the time of the signing of the deeds, and there is no evidence in the record, aside from the acknowledgment of the deeds, that appellant did not carry out his intention which he had expressed to the notary, of getting her to sign the deeds to be used only in case she died as a result of the accident, and that the deeds were for the purpose of avoiding probate proceedings, and that the title was transferred to him in furtherance of such purpose to divide among her heirs.

A fiduciary relation exists in all cases in which influence has been acquired and abused. The origin of the confidence is immaterial. It may be moral, social, domestic or purely personal. If the confidence is in fact reposed by the one party and accepted by the other the relation is fiduciary, and equity will regard dealings between the par-

ties according to the rules which apply to such relation. (*Higgins* v. *Chicago Title and Trust Co*. 312 Ill. 11; *Kochorimbus* v. *Maggos,* 323 id. 510.) The evidence in this case shows that such relation existed between appellant and his mother and that he prepared the deeds in question and induced her to sign the same. The burden, therefore, devolved upon him to produce the most satisfactory evidence to show that the deeds were not obtained by undue influence, and to explain why by their making, at a time when her recovery was doubtful, he was to benefit to the exclusion of the other heirs. The evidence fails to meet this requirement. The only evidence adduced on this subject is such as would tend to show either that while there was a manual delivery of the deeds there was not an absolute delivery, or that they were ambulatory and attempted to make a testamentary disposition of the grantor's property, in either of which cases they would be void, or that he took the title to the premises under such circumstances that equity and good conscience would require that a constructive trust should be declared for the benefit of her heirs. The chancellor, who saw and heard the witnesses and was in a position to judge of their credibility, was warranted by the evidence in the case in finding that the deeds in question were procured by undue influence exerted by appellant.

It is contended by appellant that appellee is barred by *laches* from maintaining this suit. Appellee testified that she did not know of the existence of the deeds in question until after the suit was brought. The doctrine of *laches* does not apply to this case.

The decree provided that reasonable solicitor's fees for services rendered by appellee's solicitor in this case should be allowed and taxed as costs. It is contended by appellant that in a partition suit solicitor's fees cannot be allowed to a complainant where a defense is made in good faith. This suit was not an amicable one. The defense interposed by appellant was of a substantial character and

was made in good faith.   Under this state of the record appellee was not entitled to have her solicitor's fees taxed as costs.   *McMullen* v. *Reynolds*, 209 Ill. 504; *Jones* v. *Young*, 228 id. 374; *Stortz* v. *Ruttiger*, 249 id. 494.

The decree of the circuit court will be reversed as to the allowance of appellee's solicitor's fees and in all other respects affirmed.   Appellant will pay three-fourths of the costs and appellee one-fourth.

*Reversed in part and affirmed in part.*