Argued at Pendleton, October 31, affirmed December 29, rehearing denied June 4, 1929.

## JOHN MICHAEL *v.* D. H. SPHIER ET AL.

(272 Pac. 902.)

For appellant there was a brief over the name of *Messrs. Bowerman & Kavanaugh* and *Mr. N. G. Wallace,* with an oral argument by *Mr. Jay Bowerman.*

For respondent there was a brief and oral argument by *Mr. R. S. Hamilton.*

BROWN, J.—The defendant challenges the plaintiff's right to a partition. 20 Stand. Ency. of Proced., p. 1005, defines "partition" thus:

"Partition is the act or proceeding by which co-owners of property cause it to be either divided into as many shares as there are owners, according to their interests therein, or, if that cannot be equitably done, to be sold for the best obtainable price and the proceeds distributed."

In *Clark* v. *Richardson,* 32 Iowa, 399, this subject was at issue, and the court, in the following language, stated its view as to the purpose of partition:

"The object of the action of partition is to effect a division of real property among several joint owners, so that each may hold his respective share in severalty."

This is the third suit between these parties concerning this property. For a full statement of the facts involved in the prior litigation, we refer to the case of *Sphier* v. *Michael et al.,* 112 Or. 299 (227 Pac. 1062, 229 Pac. 1100), where it was held that three certain written instruments, when construed together, created an agency in Sphier, coupled with an interest in the real property involved in this suit. That suit arose from an attempt of Michael to revoke his agency contract with Sphier. Prior to February 7, 1920, Sphier was the owner of Lot 7, Block 10, Bend, Deschutes County. The value of that real

property was about $35,000. Sphier was heavily in debt, and particularly to the Western Loan & Building Company, which company had foreclosed a mortgage owned by it upon that lot. The property was sold and Sphier was required to raise $20,000 or thereabouts, to satisfy that judgment and other creditors. Sphier sought out various persons from whom he attempted to secure a loan. From his story as related in the complaint in his second suit, we quote what he says with reference to coming in contact with plaintiff in Seattle:

"He called upon his friend, fellow countryman and fellow churchman, John Michael, defendant herein. Michael made a proposition to the plaintiff, in words and figures substantially as follows, to wit:

" 'If you can manage to make a loan in Portland for $10,000 on a first mortgage, I will let you have $10,000, $5,000 of which shall be my interest in the building, and $5,000 shall be secured by a second mortgage on the property, which is to be paid out of the rent. I'm in Seattle, you in Bend. You will collect the rents and manage the property, for which you will receive ten per cent. of the amount collected, and when the mortgages are paid, I will go you fifty-fifty.' "

The record indicates that Sphier was at that time having trouble with his wife, and, in order to anticipate possible future complications, it was decided to have the property deeded to Michael. In due time the property was conveyed to Michael, who executed two mortgages thereon, one for $10,000, the other for $5,000; and, with these loans, coupled with the $5,000 advanced by Michael, the property was redeemed. Contemporaneous with the execution of the deed by Sphier to Michael, a contract was entered into by

them, providing that Michael would convey to Sphier an undivided one-half interest in the lot in question, by proper deed, within 30 days after the date on which that property "has by, through, and from the net income derived from said property paid off in full all of the indebtedness against the same in the nature of taxes, assessments, and those certain two mortgages" one of which was in favor of Title & Trust Company of Portland for $10,000, and the other in favor of Peter Michael for $5,000. On the same date Michael likewise made a written appointment of Sphier, authorizing Sphier, as agent, to rent the property and collect the rental, for a consideration of 10 per cent of the gross receipts thereof, and requiring him, on the tenth day of each month, and after paying the current expenses of the operation of the building, to remit the balance of the income from the rental to Michael. Michael thereafter attempted to repudiate his contract by revoking the authority of Sphier as his agent for the collection of rentals. This resulted in the suit of *Sphier* v. *Michael et al.,* hereinbefore referred to. In that suit this court said, among other things:

"It was agreed between defendant John Michael and plaintiff Sphier that, as soon as the mortgages were paid out of the income from the property, Michael was to reconvey to Sphier an undivided one-half interest in Lot 7, and that in the meantime Sphier was to have the management thereof, collect rents, pay the expenses of operation from the rents, and remit the net income monthly to John Michael, who agreed to pay the moneys to the holders of the mortgages in satisfaction of the accruing interest and the principal sums, when due." 112 Or. 299, 301, 302 (227 Pac. 1062, 1063.)

This contract was ordered enforced and Michael required to account for the funds that had come into his hands as rental. Following this order, Sphier instituted a second suit, wherein he sought the rescission of the contract that he had theretofore had enforced. In this he failed. That cause terminated in the Circuit Court.

■ We now have before us for consideration a third suit. The record clearly indicates that the plaintiff and defendant are not willing to use the property in common. Sphier has said in a number of instances that he wants to get rid of Michael. While we cannot trace similar language to Michael, nevertheless it is equally evident that he wishes to rid himself of Sphier. In this connection, we note the following pertinent statement of the law by the editors of R. C. L.:

"Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common. The rule of the civil as of the common law, that no one should be compelled to hold property in common with another, grew out of a purpose to prevent strife and disagreement. And additional reasons are found in the more modern policy of facilitating the transmission of titles, and in the inconvenience of joint holding." 20 R. C. L., p. 716.

Under the facts, that a partition suit will lie in this case is beyond question. As to who may maintain a suit for partition, see Or. L., § 435. As to the sufficiency of the complaint in a suit for partition, see Or. L., § 436. And for various statutory provisions relating to suits for the partition of real property, see Or. L., §§ 435–483, incl. The necessary parties have appeared, and the court has jurisdiction of the subject matter of the case.

That the right to partition cannot be defeated because of difficulty and hardship, see Freeman on Cotenancy and Partition (2 ed.), § 433, where it is written:

"According to the weight of the authorities, every cotenant is entitled as a matter of right to demand a partition of the subject of the cotenancy, and this right cannot be defeated by showing that a partition would be inconvenient, injurious or even ruinous to the parties in interest."

The same author says, at Section 439:

"There are many instances in which the right to partition must be denied because the property has been charged with some trust, or dedicated to some purpose which would be defeated or impaired by the division of such property."

The latter section, however, has no application to the facts in the instant case.

■ It is forcefully contended that the agency contract entered into by the parties to this litigation cannot be revoked during Sphier's lifetime, and that he has a right to collect 10 per cent of the gross receipts for rent of the property involved as long as he lives. We cannot follow the learned counsel. The trial court, in its full and complete findings of fact and conclusions of law, thus correctly spoke:

"That the said deed, contract, and letter of agency set forth under Finding No. 7 herein were all a part of the same transaction.

"That it was the intent of the parties that said agency should be terminated at the time the mortgages mentioned in said contract were paid and satisfied.

"That said mortgages have been paid and satisfied of record."

In *Sphier* v. *Michael et al., supra,* it was held that, as a general rule, a principal is entitled to revoke the authority of his agent whenever he may see fit, provided there is no agreement, expressed or implied, between them as to its duration. And we further held that the agency contract there and here involved was entered into for a valuable consideration; that the agent owned an interest in the property constituting the subject matter of the agency, and that for that reason it was not revocable during the lifetime of the mortgages, and that, as soon as the mortgages were paid out of the income from the property, Michael should reconvey to Sphier an undivided one-half interest in the property. The mortgages having been paid, the agency contract may be lawfully revoked by the act of the principal.

■ In the instant case, the court decreed "that the plaintiff have judgment for an attorney's fee of $1,000." The defendant objects to that award. Our statute provides:

"The costs of partition, including fees of referees, reasonable attorney fees to be determined by the court, and other disbursements, shall be paid by the parties, respectively, entitled to share in the lands divided, in proportion to their respective interests therein and shall be included and specified in the decree. In that case, they shall be a lien on the several shares, and the decree may be enforced by execution against the parties separately. When, however, a litigation arises between some of the parties only, the court may require the expense of such litigation to be paid by the parties thereto, or any of them." Or. L., § 483.

In *Reeder* v. *Reeder,* 68 Or. 163 (135 Pac. 176, 137 Pac. 191), this court held that, under the terms of the quoted section, the costs of partition, including the

fees of referees and other disbursements, must be paid by the parties in proportion to their respective interests. To similar effect is *Meyer* v. *Eichler*, 92 Or. 1 (179 Pac. 659).

The provision relating to attorneys' fees, contained in Section 483 quoted above was added by amendment to that section subsequent to the decisions in the Reeder and Meyer cases cited above. This section now places attorneys' fees on an equality with fees of referee and other disbursements, as set out in the original enactment. See General Laws of Oregon, 1919, Chapter 71.

We now direct our attention to statutes of other jurisdictions, and decisions rendered under those statutes. The Missouri statute is similar to our own: 1 Revised Statutes of Missouri 1919, Section 1710, reads:

"In all cases founded on the statutes concerning the partition of lands, the costs shall be paid by the parties plaintiff and defendant, according to their respective interests in the lands which may be the subject of the proceedings; and the court shall render judgment against each party for his or her share of such costs."

In the enactment of this statute, the law-making body doubtless had in mind services performed for the common benefit.

In the case of *Donaldson* v. *Allen*, 213 Mo. 293 (111 S. W. 1128, 127 Am. St. Rep. 601), it was held that reasonable attorneys' fees necessarily expended should be allowed the prevailing party.

Another Missouri case wherein the court had before it the question of attorneys' fees in a partition suit is *Liles* v. *Liles*, 116 Mo. App. 413 (91 S. W. 983); and from the forceful and instructive opinion ren-

dered by that court in its disposition of the case, we quote the following:

"When the litigation is controversial and the parties are genuine adversaries contending for substantial rights, as in the present instance, the reason for apportioning the fee of the plaintiff's counsel among the parties interested fails, in so far as his right to compensation for services rendered in behalf of the plaintiff on contested issues is concerned. He is then opposing, instead of serving, the interests of the defendants, and it would be manifestly unfair to compel them to contribute toward remunerating him for that work. The decisions are quite uniform that in partition suits of a controversial character, the plaintiff must himself pay his attorney, and the defendants, who were forced to hire counsel to represent their interests, will not be made to contribute (citing numerous cases). Some of the cases have held that if there is a substantial contest, no part of the fees of the plaintiff's counsel can be taxed against the defendants. It may be that the statutes construed in those cases were not exactly like the Missouri statute, which says the court shall allow a reasonable fee to the attorney bringing suit. We entertain no doubt that the meaning of the law is that even though some controversies may arise in the case, if the demand for partition is meritorious, then for such work as is done by said attorney for the benefit of all parties interested his compensation should be taxed as costs, but for work done exclusively for his own client, the latter must remunerate him. The statute was never intended to provide for an allowance that would include a fee for litigation in the true sense."

See, also, 30 Cyc. 299, subdivision (c), where, in a discussion of the general principle underlying the statutes authorizing allowances to be made in partition suits, for the services of attorneys, appears the following:

"If a defendant has, or in good faith believes he has, a good and substantial defense to the action, and employs an attorney to present it, such defendant is not answerable for any part of the fees of complainant's attorney. Generally one litigating any issue is not chargeable for the services of any attorney who acted in hostility to him."

A perusal of the authorities convinces the writer of the verity of the following statement relating to counsel fees:

"The most fruitful question in the United States in connection with costs in partition has been the question whether in the given case counsel fees were taxable as such. In many of the states, it is held that the statutes regulating the costs of partition include counsel fees. But it is agreed that this means counsel fees in amicable suits only, because in such suits the services rendered are supposed to be of common benefit." 21 Am. & Eng. Ency. of Law (2 ed.), p. 1177.

In support of the foregoing, see list of cases under note 3. Also note the following from 20 Stand. Ency. of Proced., 1069, 1070:

"Attorney's fees cannot usually be allowed to the attorneys in the suit out of the proceeds of lands sold for partition, unless authorized by statute. But in some jurisdictions they are included as part of the costs in the absence of express statutory provision, though to entitle the party to have them taxed as costs against the entire property partitioned, the attorney should be employed and act for the common benefit of all parties. If it is necessary for the other tenants in common to employ counsel to protect their interests, complainant is not entitled to have his attorney's fees taxed as costs in the case."

Among the many decisions that support this proposition are *Gardner* v. *McAuley*, 105 Ark. 439 (151 S. W.

997); *Hoffman* v. *Smith*, 61 Miss. 544; *Ernst* v. *Ernst*, 192 Mo. App. 256 (182 S. W. 103); *Donaldson* v. *Allen*, 213 Mo. 293 (111 S. W. 1128, 127 Am. St. Rep. 601); *Oliver* v. *Lansing*, 57 Neb. 352 (77 N. W. 802); *Young* v. *Stone*, 55 Ohio St. 125 (45 N. E. 57); *Robinson* v. *Robinson*, 24 R. I. 222 (52 Atl. 992); *Berry* v. *Donald*, 168 Iowa, 744 (150 N. W. 1048).

There are statutes that permit an allowance for attorneys' fees to both plaintiff and defendant. See *Watson* v. *Sutro*, 103 Cal. 169 (37 Pac. 201). The California Statute (Code Civ. Proc., § 796) reads:

"The costs of partition, including reasonable counsel fees expended by the plaintiff, or either of the defendants, for the common benefit, fees of referees, and other disbursements, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein."

See, also, Gen. Code of Ohio (2 ed.) 1926, § 12050; Code of Tenn., Shannon, § 5035; *Crossman* v. *Wyckoff*, 64 App. Div. 554 (72 N. Y. Supp. 337).

In *Richards* v. *Richards*, 13 Ohio Nisi Prius Rep. (N. S.) 153, it was held that counsel other than for the partitioner in a partition case, who perform services which are of benefit to the parties in interest, and assist in the determination of the case, are entitled to share in the fee regularly allowed to counsel for the petitioner, but are not entitled to an extra counsel fee on account of such service.

In the State of Illinois, however, because of the express statutory provisions of the Illinois Code relating to the subject of partition, solicitors' fees of prevailing complainant are held not taxable as costs in partition suit, where a defense is made in good faith: *Seeberger* v. *Seeberger*, 325 Ill. 47 (155 N. E. 763).

In the case of *Donaldson* v. *Allen*, 213 Mo. 293 (111 S. W. 1128, 127 Am. St. Rep. 601), the Supreme Court of that state held that, in an equitable partition, as distinguished from strict statutory partition, attorneys' fees should be restricted to the partition proper, and not extended to payment for services on incidental issues heard and determined. In that case, as here, the court ordered a receivership and accounting, and decreed partition; and a fee of $5,000 was held to be reasonable in partition proceedings where the property sold for $100,000.

In the recent case of *Lewis* v. *Crawford*, 175 Ark. 1012 (1 S. W. (2d) 26), the Supreme Court of Arkansas was called upon to construe an act relating to attorneys' fees allowed the solicitor in a partition suit. Section 1 of that act provides:

"That hereafter in all suits in any of the courts of this state for partition of lands when a judgment is rendered for partition, it shall be lawful for the court rendering such judgment or decree to allow a reasonable fee to the attorney bringing such suit, which attorney's fee shall be taxed as part of the costs in said cause, and shall be paid *pro rata* as the other costs are paid according to the respective interests of the parties to said suit in said lands so partitioned." Act 386, Acts of the Gen. Assembly of Ark., 1921.

Under this act the Supreme Court of Arkansas held in the Lewis case that the trial court was not warranted in requiring defendants in adversary partition proceedings, who were represented by their own counsel, to pay a portion of the fee to the attorney bringing the suit for partition as costs of litigation.

The case of *Edwards* v. *Whims et al.*, 2 Ohio Nisi Prius Rep. (N. S.), 464, was an action for partition.

The decision there was in response to a motion filed by new counsel for plaintiff, who asked the court to retax the costs theretofore allowed plaintiff's former attorney in the case, as well as the fees allowed to the attorneys for the defendants therein. It appears that the parties had filed their pleadings, and, in addition to the usual allegations relating to the title, various questions were raised as to indebtedness due the common estate, and also as to advancements made to some of the heirs and judgment lienholders. When the case was finally reached, the parties settled their differences and agreed upon a partition of the land, and exchanged quitclaim deeds accordingly. At the same time, a fee of $350 was allowed the plaintiff, and a fee of $150 to each of counsel for two of the defendants. One of the reasons assigned for requesting the annulment of the former order allowing costs was that the partition was made in accordance with an agreement among the parties themselves; and, in determining the question, the court said, among other things:

"It is my opinion * * that, in such case as is presented here, it was the duty of the court to make an allowance of fees commensurate with the services actually rendered for the common benefit up to the time amicable partition was actually made. In this case the question also arises as to whether or not the court was justified in allowing fees to counsel for the defendants. The allowance to these counsel is questioned here, and I think it my duty to observe that in this case the services of counsel for the defendants were manifestly most necessary and conduced most materially to the amicable partition which followed. * * It is contemplated that the services in these cases shall be all rendered by the counsel for plaintiff, and in the ordinary circumstances he is fully qualified to render the entire service. Any

allowance of fees to defendants' counsel in such cases not only tends to reduce the legitimate fee of the attorney for the plaintiff, but also would have a tendency to increase the total amount of fees allowed and thereby increase the burden upon the parties.''

The fee in the instant case is slightly less than 3 per cent of the proved value of the property. Hence we conclude that the court, in determining the amount of the fee, restricted it to the partition proper.

Based upon the disclosures made by the record, we assume that the trial court viewed the services of the defendant's counsel as worthy and able, but as strictly antagonistic to the suit for partition. Had the record revealed any competent evidence indicating that the services of defendant's counsel were rendered for the common benefit, there would appear some reason to award him counsel fees. But, in the light of the record and the statute, we can make no such allowance: *Lowe* v. *Phillips,* 21 Ohio St. 657.

This cause is affirmed.

AFFIRMED. REHEARING DENIED.

RAND, C. J., and BEAN and BELT, JJ., concur.