Argued and submitted April 12, 2002, affirmed February 5, 2003

Glenn Thomas OWEN,
Personal Representative of the
Estate of Catherine Zorn,
*Plaintiff,*

*and*

Glenn Thomas OWEN,
Trustee of the Joseph Zorn Trust u/w/d/ 11/27/89,
*Appellant,*

*v.*

ZORN FARMS, INC.,
an Oregon corporation,
*Respondent,*

*and*

Christine OWEN;
Anne Unterbrink; Ann Plienis;
Margaret Grace; Glenn Joseph Owen;
Kelly Farms, Inc.,
an Oregon corporation, leaseholder;
Mabel Zorn; Mark Apperette;
and Ernst Nursery & Farm, LLC.,
an Oregon limited liability company,
*Defendants.*

98C-12114; A112538

62 P3d 854

Timothy R. Volpert argued the cause for appellant. With him on the briefs were Mark J. Hackett and Davis Wright Tremaine LLP.

George W. McKallip, Jr., argued the cause for respondent. With him on the brief was Sussman Shank, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Joseph Zorn's will established a trust for the benefit of his wife Mabel and named plaintiff as the trustee.[1] Plaintiff brought this action to partition and sell some of the real property that is held in the trust. Defendant Zorn Farms, Inc., moved for partial summary judgment, arguing that the requested partition and sale violated both the terms of the trust and plaintiff's fiduciary duties. The trial court agreed, granted defendant's motion, and entered judgment accordingly. *See* ORCP 67 B.[2] Plaintiff appeals, and we affirm.

The real property that is the subject of plaintiff's claim is part of the Zorn family farm. For generations, the Zorns have accumulated and farmed more than 1,500 acres of land in Marion County. Before his death, Joseph Zorn was the sole owner of several parcels of land that make up the Zorn family farm. He also owned three other parcels, known as Home Place, Snurr Farm, and Tax Lot 200, as a tenant in common with other members of his family and defendant Zorn Farms, Inc.—one of two closely held corporations that Joseph and his father established in the 1960s. The other corporation, Zorn, Inc., was established to farm the family land, which it leased from defendant and family members.

Joseph died in 1992. In his will, he created a trust for the benefit of his wife Mabel and funded the trust with the real property that he owned. He also named plaintiff as the trustee. After Joseph's death, plaintiff assumed control of both defendant and Zorn, Inc., and managed them in a way that led to some conflict. In 1996, an arbitrator found that plaintiff had breached his fiduciary duties to defendant by causing it to enter into an unfavorable lease in 1993 with Zorn, Inc.,[3] that plaintiff had drained defendant's corporate

---

[1] Plaintiff is the son of Joseph's sister Christine.

[2] Before his death, Joseph, his sister Catherine, and several other persons owned the three parcels of real property at issue here as tenants in common. Plaintiff brought this action both in his capacity as the trustee of Joseph's trust and also in his capacity as the personal representative of Catherine's estate. Defendant's motion for partial summary judgment was directed only at plaintiff's claim in his capacity as trustee.

[3] The arbitrator found that, when plaintiff caused defendant to enter into the unfavorable lease with Zorn, Inc., he "was aware that he would likely be voted out of control [of defendant] and that a new independent board would be in place shortly." Plaintiff, however, maintained control of Zorn, Inc., which benefitted from the 1993 lease.

bank account, and that he had caused a declaratory judgment action to be filed against defendant to have the 1993 lease declared valid. The arbitrator ordered plaintiff and Zorn, Inc., to pay defendant $185,000 in compensatory damages and $25,000 in punitive damages.[4] After the arbitrator issued his order, both plaintiff and Zorn, Inc., filed for bankruptcy.

Plaintiff then filed this action in his capacity as trustee to have Home Place, Snurr Farm, and Tax Lot 200 partitioned and sold. *See* ORS 105.205.[5] He alleged that the property has not produced satisfactory returns and that Mabel had asked him to dispose of the property. Defendant, which is now controlled by plaintiff's brother, answered and moved for partial summary judgment on two grounds.[6] First, it argued that, under the will, specific conditions must be satisfied before any of the property held in trust can be sold. Defendant contended that those conditions had not been met. Second, defendant argued that plaintiff had a conflict of interest that prevented him from seeking to sell the trust's land. Defendant noted that the will provides that, on Mabel's death, the real property held in trust will go to defendant and all other assets will be divided equally between plaintiff and his brother. Defendant also noted that the trust consists almost exclusively of real property. It followed, defendant reasoned, that unless plaintiff sells the real property, he will take essentially nothing from the trust on Mabel's death and therein lies the conflict.[7]

---

[4] In awarding punitive damages, the arbitrator stated, "I am ordinarily not an advocate of punitive damages, but I think in this case there is abundant proof that they should be awarded."

[5] ORS 105.205 authorizes a tenant in common to seek partition of real property and "a sale of all or a part of the property if it appears that a partition cannot be had without great prejudice to the owner."

[6] Defendant is both a cotenant of one of the parcels of land and a remainder beneficiary of the trust. As a remainder beneficiary, it may petition the court for the purpose of "[o]btaining authority, approval or instructions on any matter concerning the interpretation of the trust or the administration, settlement or distribution of the trust estate." *See* ORS 128.135(2)(c); *Cloud v. U.S. National Bank*, 280 Or 83, 570 P2d 350 (1977) (trust beneficiaries may petition for remedies necessary to protect their interests in the trust).

[7] Conversely, under the terms of the will, defendant will receive nothing if the real property has been sold before Mabel dies and almost everything if it has not. Although defendant is as self-interested as plaintiff, it is not the trustee.

After considering the parties' submissions, the trial court ruled that, on the record before it, the will explicitly prevented plaintiff from selling the real property. Alternatively, the court ruled that plaintiff's conflict of interest prevented him from seeking a sale. The court entered judgment accordingly, *see* ORCP 67 B, and plaintiff has appealed. On appeal, plaintiff argues (1) that any condition that the trust places on his ability to sell the property has no bearing on his statutory right to seek a partition and sale; (2) that, even if the trust limits his right to seek a partition and sale, the condition on which the trial court relied is merely precatory; and (3) that, even if the condition is not precatory, there is a disputed question of fact as to whether the condition was satisfied. Plaintiff also argues that there is no conflict of interest because any conflict arises from the terms of the will itself. Because we agree with the trial court that plaintiff lacked authority under the trust to sell the real property, we do not decide whether the sale would also violate plaintiff's fiduciary duties.

■ We begin with the question whether ORS 105.205 gives plaintiff an absolute right to seek a partition and sale of the trust property without regard to any limitation that the trust places on him. ORS 105.205 provides that, when several people hold real property as tenants in common, "any one or more of them may maintain a suit for the partition of the real property." Textually, the only limitation on a person's ability to bring a partition action is that the plaintiff or plaintiffs "hold real property as tenants in common," and there is no dispute that plaintiff, as the trustee, does so. However, in construing the predecessor to ORS 105.205, the Supreme Court explained that

"[t]he right to partition may be either expressly or impliedly limited and restricted, or prohibited altogether by the provisions of wills or deeds under which the parties claim; and courts will not award partition in violation of a condition or a restriction imposed upon the estate by one through whom the one asking partition claims."

*Harris v. Harris*, 138 Or 243, 248-49, 6 P2d 230 (1931); *see also Michael v. Sphier*, 129 Or 413, 419, 272 P 902 (1928).[8]

---

[8] *Palmer v. Protrka*, 257 Or 23, 476 P2d 185 (1970), on which plaintiff relies, is inapposite. In that case, the trial court had adjusted the parties' interests in a

Because the court's interpretation of the statute binds us, the question that defendant raises—whether the trust limits plaintiff's authority to seek a partition and sale of the property—is properly before us.

■ Plaintiff advances a second issue. He argues that the only limitation set out in the will is merely precatory. Three paragraphs of the will are relevant to that issue. They provide:

"4.2   If my wife survives me, my Trustee shall pay to or for the benefit of my wife, during her lifetime and through the date of her death, the entire net income of the trust estate. Such income shall be paid at convenient intervals but not less often than annually. In addition, my Trustee shall pay to or for the benefit of my wife, during her lifetime, such sums from the principal of the trust estate as my Trustee determines, in its sole discretion, to be reasonable and necessary for her medical care, support, maintenance and reasonable comforts.

"4.2.A   I request in the strongest possible terms that neither the real property utilized in the business of Zorn, Inc. or Zorn Farms, Inc., both Oregon corporations, nor the stock in either of said corporations, shall be sold or disposed of to any person or entity other than to such corporations. Further, I direct my Trustee to use its best efforts to make such assets productive on behalf of the trust estate and the beneficiaries thereof. Nevertheless, my wife may at any time require my Trustee to dispose of any unproductive asset.

"* * * * *

"4.8.G   My Trustee shall have all the powers granted to trustees generally by the laws of the State of Oregon * * * [in addition to the power to] manage, sell, convey, exchange, encumber, option, assign, divide, subdivide, improve and

---

partition action "not simply upon the basis of the respective contributions made by Robert and Elsie Palmer to the purchase and improvement of the property, but also upon the basis of the previous division of other property in the separation proceedings." *Id.* at 28. The court held that the sort of equitable considerations that are appropriate in dividing property in a dissolution proceeding have no place in a partition action. *Id.* at 29. The court did not call into question its earlier holding that the terms of the will under which a devisee took real property limited his ability to bring a statutory action for partition. *See Harris*, 138 Or at 248-49.

maintain the trust estate, or any part thereof * * * provided, however, except as described in Paragraph 4.2.A, my Trustee shall not sell or otherwise dispose of any real property utilized in the businesses of Zorn, Inc. or Zorn Farms, Inc. * * * or the stock in either of said corporations, except in sale or disposition to one or both of them * * *."

Plaintiff argues that paragraph 4.2 gives him implied authority to partition and sell the real property held in trust whenever, in his discretion, it is necessary to provide income for the beneficiary. In plaintiff's view, paragraph 4.2.A does not limit that authority; rather, it simply states the testator's nonbinding request not to sell the property unless certain conditions have been met. Defendant responds, correctly we conclude, that paragraph 4.8.G makes the otherwise precatory language in paragraph 4.2.A binding.

Paragraphs 4.2 and 4.2.A point in different directions. In paragraph 4.2, Joseph named his wife Mabel as income beneficiary. He also provided that the trust principal may be invaded if the trustee determines it is reasonable and necessary to do so for her care, support, maintenance, and reasonable comforts. If, as in this case, the trust principal is made up exclusively of real property, this paragraph impliedly authorizes the trustee to partition and sell the land in order to enable him to pay reasonable sums for those ends. *See First Nat. Bk. v. Multnomah Lbr. & Box Co.*, 125 Or 598, 626, 268 P 63 (1928) (power of sale implied when necessary to carry out trust terms); *Crown Company v. Cohn*, 88 Or 642, 652-53, 172 P 804 (1918) (trustee had implied authority to sell property).

In paragraph 4.2.A, however, Joseph expressly states a desire contrary to that implied power—he urges "in the strongest possible terms" that the land held in trust not be sold publicly, and he directs the trustee to use his "best efforts" to make the trust assets productive on behalf of the trust and its beneficiaries. The paragraph concludes with an exception to the request that the land not be sold: "Nevertheless, my wife may at any time require my Trustee to dispose of any unproductive asset."

Determining the relationship between those two paragraphs might be more difficult were it not for paragraph 4.8.G. *See U.S. National Bank v. Duling*, 39 Or App 329, 334-36, 592 P2d 257, *rev den*, 287 Or 1 (1979). That provision expressly authorizes the trustee to sell the trust estate but adds the following limitation on that express grant of authority: "provided, however, except as described in Paragraph 4.2.A, my Trustee shall not sell or otherwise dispose of any real property utilized in the businesses of Zorn, Inc. or Zorn Farms, Inc. * * * except in a sale or disposition to one or both of them." Paragraph 4.8.G converts the precatory language in paragraph 4.2.A into a binding restriction on the trustee's authority to sell the real property held in trust.

Reading paragraphs 4.2.A and 4.8.G together, we conclude that plaintiff may sell the real estate held in trust and used in the businesses of Zorn, Inc., or Zorn Farms, Inc., in one of two instances. First, plaintiff may sell the land to Zorn, Inc., or Zorn Farms, Inc., without first complying with the limitations set out in paragraph 4.2.A. That much follows from the second exception to the proviso in paragraph 4.8.G. Second, plaintiff may sell the land to someone other than Zorn, Inc., or Zorn Farms, Inc., if Mabel "require[s the] Trustee to dispose of any unproductive asset." That is, the trustee may sell the land to anyone if: (1) Mabel has directed the trustee to dispose of the asset and (2) the asset is "unproductive."[9]

Having identified the terms on which plaintiff may sell the property, we turn to the third and final question that the parties raise—whether those terms have been met. On that point, plaintiff did not argue below that the court should partition the property so that it could be sold to either Zorn,

---

[9] Although paragraph 4.2.A directs the trustee to use his best efforts to make the trust assets productive "on behalf of the trust estate and the beneficiaries thereof," Mabel's authority to require the trustee to sell an unproductive asset is not conditioned on the trustee's fulfillment of that obligation. Rather, after directing the trustee to use his best efforts to make the land productive, the next sentence begins with the word, "nevertheless." That word implies that, even if the trustee has not used his best efforts, Mabel may still direct the sale of an unproductive asset. Similarly, the phrase, "at any time" makes clear that Mabel's authority to require the sale of an unproductive asset is not conditioned on the trustee's first using his best efforts to make the asset productive.

Inc., or defendant.[10] Rather, he argued that the three parcels of land were unproductive and Mabel had requested their sale. He renews that argument on appeal.[11] In response, defendant does not dispute that Mabel has requested that plaintiff sell the trust's interest in the three parcels, but it disagrees with plaintiff that those parcels are unproductive. On that point, the parties' dispute does not focus so much on the evidence as it focuses on the interpretation of the term "unproductive." We first set out the relevant evidence[12] and then turn to the parties' interpretative dispute.

Four facts are relevant. First, the value of the trust's interest in the three parcels of land is slightly more than $358,000. Second, in 1997, which plaintiff agrees was a representative year, the net income from two of the parcels was $4,659.14, and the net income from the third parcel could not have exceeded $4,863.08. Third, offsetting this income are expenses that the trust has incurred, such as the trustee's fees and legal expenses for the actions that the trustee has initiated. Finally, plaintiff does not claim that Mabel has any present or immediately foreseeable needs that are not being met. Rather, he seeks to sell the property because he is "concerned that the Trust lacks sufficient liquidity to meet her

---

[10] Indeed, in his affidavit, plaintiff discounted the possibility of a sale to those two entities. He stated that he had "not received a reasonable offer to purchase [the land] from Zorn Farms, Inc. or Zorn, Inc."

[11] Plaintiff also argued below, and renews the argument on appeal, that, under paragraph 4.2, he may sell the property whenever he determines, in his sole discretion, that a sale is necessary to provide for Mabel's needs. As explained above, however, paragraphs 4.2.A and 4.8.G expressly limit the implied authority to sell the property set out in paragraph 4.2.

[12] Although the trial court ruled on defendant's motion for partial summary judgment in December 1998, it did not enter the ORCP 67 B judgment until November 3, 2000. ORCP 47 C, as amended in 1999, thus applies, and the adverse party has the burden of producing evidence on any issue raised in the motion as to which that party would have the burden of persuasion at trial. Neither party has briefed the question of who would have the burden of proving or disproving at trial plaintiff's lack of authority to seek a partition and sale of the real property. The fact that defendant has pleaded it as an affirmative defense is not necessarily dispositive, *Portland General Electric v. Hershiser*, 86 Or App 40, 44, 738 P2d 593, *rev den*, 304 Or 149 (1987), and the question is a close one. *See* ORCP 19 B; *Red Deer v. Cherokee County*, 183 FRD 642, 652 (ND Iowa 1999) (interpreting the "catch-all" provision of the federal analogue to ORCP 19 B); Moore's Federal Practice 3D, § 8.07[5]. Because the relevant evidence is not disputed, we need not decide that question to resolve this case.

unanticipated needs in the future." Plaintiff confirmed this state of the record at oral argument.[13]

Consistently with this record, plaintiff argues on appeal that he "expects that [Mabel] will have unanticipated needs in the future," that the trust does not have any liquid assets, and that appropriate steps should be taken now "to assure that the Trust can meet Mabel Zorn's future needs." More specifically, the trustee argues that prudence dictates that he convert the trust assets now into a more productive form so that he can receive a better return on them. Although plaintiff does not attribute a specific definition to the term "unproductive," he appears to take the position that an asset is unproductive if the level of income the asset presently produces is insufficient to meet the beneficiary's unanticipated future needs.

Defendant does not dispute the evidence on which plaintiff relies, at least on the motion for partial summary judgment.[14] Rather, it advances two interpretations of the term "unproductive." It argues initially that "unproductive" means "not producing profit; not bringing in any return." Because, in defendant's view, any profit—presumably even a dollar—is sufficient to establish that the land is productive, the trustee lacks authority to sell it. Alternatively, defendant

---

[13] The following colloquy occurred at the hearing on defendant's motion for partial summary judgment:

"THE COURT: Has the life beneficiary sought the sale of any of the principal in order to meet—get cash to meet her needs?

"[PLAINTIFF'S ATTORNEY]: She has not sought it at this point for—for any specific need. All that she has asked is that I [sic] may have needs in the future, take steps to make sure that these assets are productive. That's all she has told us so far. At this point she's very recently retired and, as I say, healthy at this point."

[14] Defendant does identify other ways, short of selling the property, that the property could be made more productive if Mabel were to require a greater level of income in the future. It notes that there is a substantial amount of timber on the land that could be harvested. It also observes that Zorn, Inc., has not paid any rent on the land that it used in 1997. The question, however, under paragraph 4.2.A is not whether the property could be more productive. It is whether it is currently unproductive. It may be that a beneficiary could sue the trustee for breach of fiduciary duty if the trustee failed to use his or her best efforts to make the property productive, but the trustee's failure in that regard is not a bar to selling an unproductive asset if Mabel requires the trustee to do so. *See* n 9 above.

argues that the term "unproductive" means not sufficiently productive to meet Mabel's present needs. In defendant's view, the term "unproductive" cannot be read, in the context of the other goals set out in paragraph 4.2.A, to permit plaintiff to sell the real property in order to meet Mabel's unanticipated future needs.

The parties have identified three plausible interpretations of the term "unproductive." The dictionary definition of the term does not help us choose among them. The dictionary defines "unproductive" as:

"not productive ‹elimination of ~ or high-cost industries—Harold Callender› ‹efforts of early missionaries to proselyte Minnesota Indians were largely~ —Amer. Guide Series: Minn.›"

Webster's Third New Int'l Dictionary 2506 (unabridged ed 1993). Productive, in turn, means: "yielding or furnishing results, benefits, or profits ‹a ~ program of education›." Id. at 1810. Those definitions of productive and unproductive make clear that each term is relative; whether something is productive or not varies depending on the goals that are sought to be advanced. While the dictionary definitions cut against defendant's first proposed interpretation of the term, they do not definitively resolve which of the three plausible interpretations that the parties advance is the correct one.

The parties do not identify any extrinsic evidence that helps us resolve the ambiguity, and we accordingly "look to 'the four corners' of the [will] to determine whether we can glean the [testator's] intent." See U.S. National Bank, 39 Or App at 334. We draw three propositions from the will. First, Joseph established the trust to provide income for his wife during her lifetime. Second, Joseph expressed his desire, in the strongest possible terms, to keep the land within the family if at all possible. Third, Joseph did not give the trustee discretion to decide when it was necessary to sell the land in order to provide for his wife. Rather, he left that decision to his wife with the only limitation being that no asset can be sold unless it is "unproductive."

Interpreting the term "unproductive" consistently with those goals, we conclude that the question whether an

asset is productive must be determined in light of Mabel's needs. If the income is insufficient to meet her present or immediately foreseeable needs, then the land is unproductive, and the trustee may sell the land if Mabel "requires" him to do so. We do not interpret the term "unproductive" as broadly as plaintiff would, however. We do not agree that the trustee may sell the land to meet Mabel's unanticipated future needs. That interpretation would defeat Joseph's goal of keeping the land intact without advancing, in any material way, his goal of ensuring that Mabel's needs are met. Under plaintiff's approach, he would be able to sell the land to meet a future need that may never arise.

■     Applying that definition to the evidence in this record, we agree with the trial court that plaintiff lacks authority to sell the land. Plaintiff's attorney admitted in the trial court that Mabel has no present or immediately foreseeable needs that are not being met. Similarly, as plaintiff explains in his affidavit, he is concerned that "the Trust lacks sufficient liquidity to meet [Mabel's] *unanticipated needs in the future*." (Emphasis added.) Finally, plaintiff's affidavit states that "Mabel Zorn has requested that I dispose of Trust assets to make the Trust more productive." His affidavit does not state that Mabel requested him to sell trust assets because they are either unproductive or insufficient to meet her present or immediately foreseeable needs. On this record, the trial court correctly ruled that the three parcels at issue in this case are not "unproductive" within the meaning of paragraph 4.2.A. Because Mabel cannot require plaintiff to dispose of the land, plaintiff lacks authority, under the terms of the will, to seek a partition and sale of the property.[15] The trial court correctly granted defendant's motion for partial summary judgment.

Affirmed.

---

[15] Plaintiff also argues that, regardless of Mabel's present or future needs, he should be able to sell the real property to meet the trust expenses, such as his fees and the expenses that he has incurred on behalf of the trust. As explained above, the terms of the will expressly limit the circumstances in which the real property held in trust may be sold. In this case, plaintiff has argued that the terms of the trust permit him to sell the land, an argument that we reject. Plaintiff has not claimed that some other principle of trust law permits him to invade the trust corpus to pay the trust's expenses, and we express no opinion on that issue.