Argued and submitted October 14, 2003, reversed and remanded July 8, 2004

William B. McMILLAN, Jr.;
Sewell Lee Avery McMillan;
Nancy Jean McMillan Peggs;
Nancy Follansbee Campaigne;
Robert C. Peggs, individually and as Trustee;
John David Peggs, individually and as Trustee;
Mercantile Trust Company N.A.,
a National Association, as Trustee,
*Appellants,*

*v.*

Rogers V. FOLLANSBEE,
individually and as Trustee, et al.,
*Defendants,*

*and*

NORTHERN TRUST CORPORATION, as Trustee;
Susan S. McMillan, individually and as Trustee;
William M. McMillan, individually and as Trustee;
Steven W. McMillan, individually and as Trustee;
Peter A. McMillan, individually and as Trustee;
Andrew McMillan, individually and as Trustee;
Arla Elizabeth McMillan, individually and as Trustee;
and Margaret A. McMillan, individually and as Trustee,
*Respondents.*

Curtis Rogers CAMPAIGNE;
Avery Lee Campaigne;
and Clay Wisner Campaigne,
*Cross-claim-Plaintiffs,*

*v.*

Rogers V. FOLLANSBEE, as Trustee;
Northern Trust Corporation, as Trustee;
Michael K. Cavanaugh, as Trustee;
Lea Follansbee; Jack Follansbee; Arla Follansbee;
and John Camm Broughton,
*Cross-claim-Defendants.*

981006; A116881

93 P3d 809

Barbee B. Lyon argued the cause for appellants. With him on the briefs were William F. Martson, Jr., and Tonkon Torp LLP.

Phillip D. Chadsey argued the cause for respondents. With him on the brief were Scott E. Crawford and Stoel Rives LLP.

Before Armstrong, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

◾    Plaintiffs filed a statutory proceeding to partition real property.[1] They appeal from a judgment that dismissed their claims. The trial court reasoned that plaintiffs had waived their right to seek partition of the property by signing an agreement to convey their undivided shares of the property into a common trust. Although governed by statute, partition is an equitable remedy, and our review is *de novo*. ORS 19.415(3);[2] *Maupin v. Opie*, 156 Or App 52, 964 P2d 1117, *rev den*, 328 Or 194 (1998). We conclude that the trial court erred in dismissing the claims and reverse the judgment and remand for further proceedings.

    Waldo Avery, Jr., and Sewell L. Avery owned undivided half interests in approximately 12,365 acres of timberland in Linn County. In their respective wills, the brothers devised portions of their interests in the timberland to their devisees through separate trusts, to be managed as a single unit for the benefit of the Avery family, with the voluntary cooperation of the trustees. Sewell and his wife Hortense placed two-thirds of their combined half interest in the timberland in a trust for the benefit of their six grandchildren. In general terms, the trust was set up so that the undivided interests in the timberland would be distributed to the grandchildren after the death of the testators and their two daughters. After the death of the testators and their daughters, any grandchild over the age of 50 would be entitled to

---

[1] The plaintiffs who filed the action are William B. McMillan, Jr., Sewell Lee Avery McMillan, Nancy Jean McMillan Peggs, Nancy Follansbee Campaigne, Robert C. Peggs, John David Peggs, and Mercantile Trust Company, which is the trustee for the interests of Robert C. and John David Peggs in the relevant property. Because of the dates on which Robert C. and John David Peggs acquired their interests in the property, their partition claims are not subject to the waiver principle on which the trial court dismissed the partition claims of the other plaintiffs. Consequently, the partition claims of Robert C. and John David Peggs have not been dismissed and are not at issue on appeal. Unless otherwise noted, the references to plaintiffs in this opinion are to William B. McMillan, Jr., Sewell Lee Avery McMillan, Nancy Jean McMillan Peggs, and Nancy Follansbee Campaigne.

[2] ORS 19.415 was amended in 2003. Or Laws 2003, ch 576, § 88. Those amendments apply only to judgments entered on or after the law's effective date. Or Laws 2003, ch 576, § 90a. Because the judgment in this case was entered before that date, the 2001 version of the statute applies.

receive a distribution of his or her entire share of the timberland, free and clear of any trust obligation.[3] Plaintiffs and defendants are the grandchildren and great-grandchildren of Sewell and Hortense, and this dispute concerns only the Sewell portion of the timberland, which the parties now hold as tenants in common.

In anticipation of the death of the testators and their daughters, in 1968 and again in 1977, the trustees of the Sewell trusts decided to continue the unified management of the timberland under the terms of the original trust and asked the adult beneficiaries to sign "Continuation of Trust" agreements that required those who received distributions of property before December 31, 1999, to convey their interests in the property to the trustees of a common trust and to execute a trust agreement for the property. For the purpose of the issues raised by this appeal, the parties agree that the 1977 agreement (the Continuation Agreement) is the relevant document. The six individually named plaintiffs, as well as five of the defendants who were of legal age at the relevant time, signed the Continuation Agreement.

On June 1, 1996, Nancy Avery Follansbee, the last daughter of Sewell and Hortense, died. At that time, four of the six plaintiffs, William B. McMillan, Jr., Sewell Lee Avery McMillan, Nancy Jean McMillan Peggs, and Nancy Follansbee Campaigne, were over the age of 50 and received distributions of their undivided interests in the timberland. However, they did not convey their interests to the trustees of a common trust or sign a trust agreement as required by the Continuation Agreement. Plaintiffs Robert C. Peggs and John David Peggs also signed the Continuation Agreement, but, because they did not receive a distribution of their interests before December 31, 1999, they have no obligation under the Continuation Agreement to place their interests in a common trust. The trial court's judgment states that the rights of Robert and John Peggs to seek partition are not affected by the Continuation Agreement, and there is no cross-appeal of that determination.

---

[3] The trust terminates 21 years after the death of Ellen Avery Hemstead, the last "life in being." *See* ORS 105.950 - 105.975. Hemstead died in 1999.

It is undisputed that the purpose of the original trust and the Continuation Agreement was to keep the timberland under common management for the benefit of all the family. Although most of the undivided fractional shares of the timberland are now held separately by the individual beneficiaries or by their own trusts, the original common trust has operated continuously. The property is currently managed by a timber management firm, with the beneficiaries receiving the proceeds of timber sales according to their proportionate shares. Because of the nature of the ownership of the property, decisions concerning its management require the agreement of all of the owners. Plaintiffs, who together own an undivided 24.07 percent interest in the timberland, disagree with other owners concerning the management of the timberland. They seek to partition the property so that they can each receive a distribution of their interest, sell their respective shares, and replace them with liquid assets that better suit their financial needs. Defendants are satisfied with joint ownership through the duration of the trust and oppose any partition of the land. They assert that, in signing the Continuation Agreement, plaintiffs waived their rights to seek partition of the property. The trial court agreed with defendants. In their first and second assignments of error, plaintiffs contend that the trial court erred in ruling that plaintiffs had waived their right to seek partition.

The right to partition real property in Oregon is primarily governed by statute. *See* ORS 105.205 - 105.405. ORS 105.205 provides that a person holding real property as a tenant in common may seek to partition the property according to the respective rights of the parties holding an interest in the property. On proof of ownership, the court "shall decree a partition according to the respective rights of the parties, as ascertained by the court." ORS 105.245.

The purpose of partition is to allow joint owners to sever their relationship, if they so desire:

> " 'Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common. The rule of the civil as of the common law, that no one should be compelled to hold property in common with another, grew out of a purpose to prevent strife and disagreement.' "

*Michael v. Sphier*, 129 Or 413, 418, 272 P 902 (1928) (quoting 20 Ruling Case Law 716); *see Brogoitti et ux v. Brown et ux*, 231 Or 309, 313, 372 P2d 773 (1962). Reflecting that policy, the right of a cotenant to seek partition is often described as "absolute," *see, e.g.*, *Maupin v. Opie*, 156 Or App at 62, meaning that no justification for a partition is required and a cotenant is entitled to obtain a partition of commonly owned property as a matter of right and not merely at the discretion of the court. Further, the right may not be defeated by an assertion that partition would be " 'inconvenient, injurious or even ruinous to the parties in interest.' " *Michael*, 129 Or at 419 (quoting A. C. Freeman, *Cotenancy and Partition* § 433, at 569 (2d ed 1886)).

■     However, as we recently held in *Owen v. Zorn Farms, Inc.*, 186 Or App 199, 205, 62 P3d 854, *rev den*, 336 Or 125 (2003), the "absolute" right to partition can nevertheless be subject to limitations. The Supreme Court has addressed those limitations in several cases. In *Michael*, for example, the court noted that

> " '[t]here are many instances in which the right to partition must be denied because the property has been charged with some trust, or dedicated to some purpose which would be defeated or impaired by the division of such property.' "

129 Or at 419 (quoting Freeman, *Cotenancy and Partition* § 439 at 581). In *Harris v. Harris*, 138 Or 243, 248-49, 6 P2d 230 (1931), the court said that "[t]he right to partition property may be either expressly or impliedly limited and restricted, or prohibited altogether by the provisions of the will or deeds under which the parties claim." Similarly, in *Killam v. Killam*, 251 Or 59, 61, 444 P2d 479 (1968), the court said that an agreement providing that real property will be held in cotenancy and not partitioned will prevent judicial partition. *See also* 4 *Thompson on Real Property* § 38.03(b)(1)(iii) (Thomas ed 1994); *Partition*, 59A Am Jur 2d § 52 at 45 (2003) ("An agreement not to partition is implied where the purpose of the transaction would be defeated by partition."). In defendants' view, plaintiffs' right to seek partition of their fractional shares of the timberland is limited by their promise in the Continuation Agreement to convey their

interests to the trustees of a common trust so that the property can continue to be managed as a single unit. Although they do not seek to enforce the agreement, they claim that the necessary import of an agreement that requires the parties to put their property into trust is a waiver of a right to seek partition of the property. We turn to the text of the Continuation Agreement.

Under the Continuation Agreement, any signatory who receives a fractional interest in the timberland before December 31, 1999, is required to transfer that interest to the trustees of a common trust and to execute a trust agreement:

"[I]t is mutually agreed by each Party with all the other Parties hereto as follows:

"1.   In the event that subsequent to the date hereof and prior to December 31, 1999, any Party hereto, by distribution from any trust created under the Will of Hortense Wisner Avery, shall receive, or become entitled to receive, any fractional interest in the lands described on Schedule I hereto annexed, said Party shall forthwith assign and transfer such fractional interest by a good and sufficient conveyance to The Northern Trust Company, Chicago, Illinois (hereinafter sometimes referred to as 'Corporate Trustee'), Clarence H. Shaver and William B. McMillan, Jr. (collectively hereinafter referred to as 'Trustees') and contemporaneously with the making of said conveyance enter into a trust agreement with said Trustees in substantially the form of that annexed hereto marked Exhibit A, or if prior to the receipt of such fractional interest said Party has entered into such trust agreement with said Trustees said Party will assign and transfer said fractional interest to said Trustees in such manner as will make the same subject to the provisions of the trust agreement theretofore entered into with said Trustees.

"2.   In the event that subsequent to the date hereof and prior to December 31, 1999, any Party hereto, by distribution from any trust created under the Will of Hortense Wisner Avery, receives a fractional interest in the lands described in Schedule I hereto annexed, said Party will not assign, transfer or set over said fractional interest in said lands to any person other than the aforesaid Trustees."

All plaintiffs signed the Continuation Agreement. All plaintiffs except Robert and John Peggs received their interests before December 31, 1999.

■■ The trial court concluded that, in signing the agreement, plaintiffs waived their right to seek partition of the property. On appeal, plaintiffs assert that there has been no waiver, either contractual or otherwise. The first question that we address is the extent to which the Continuation Agreement can be viewed as a contractual waiver of plaintiffs' right to seek partition. A contractual waiver requires the intentional relinquishment of a known right, manifested in an unequivocal manner. *Moore v. Mutual of Enumclaw Ins. Co.*, 317 Or 235, 240, 855 P2d 626 (1993); *Waterway Terminals v. P.S. Lord*, 242 Or 1, 26, 406 P2d 556 (1965). Defendants do not assert that plaintiffs should be held to the terms of the Continuation Agreement, except to the extent that it reflects an intention to forgo a statutory right to partition. They contend that the necessary implication of the Continuation Agreement's requirement that all fractional interests be transferred to trustees is that the owners are prohibited from partitioning their interests and have thereby waived their right to seek partition. Defendants assert, in essence, that, in agreeing to convey their interests to a trust, plaintiffs necessarily agreed not to seek partition of the property for the duration of the trust.

Plaintiffs reply that the Continuation Agreement's requirement to convey fractional interests to the trustees does not address, concern, or conflict with a party's right to seek partition of a fractional interest from the undivided whole, so the Continuation Agreement's requirement cannot constitute an unequivocal waiver of the right to partition. Plaintiffs assert, further, that any possible intention to maintain the property in trust has been frustrated by the beneficiaries' failure to fulfill their obligations under the Continuation Agreement to convey the property into trust. Now, only a small minority of the shares of the property are held in a common trust. Because of their divergent interests, it has been difficult for the owners to reach consensus concerning the harvesting of timber and the management of the property. Family members have experienced tension among

themselves as a result of their inability to agree on the management of the property. The firm that has managed the timber has even threatened to resign because of the owners' inability to agree on a management plan. Such circumstances, plaintiffs contend, are inconsistent with common ownership and illustrate why the right to seek partition is an integral component of common ownership and why plaintiffs should be free of any obligation under the Continuation Agreement to convey the property into trust.

We need not resolve in this case whether, had it been performed, the Continuation Agreement would have had the effect of waiving plaintiffs' right to partition the property. There is little doubt that, in agreeing to convey the property into trust, the parties intended that the property would be managed as a single unit. Partition would likely have been inconsistent with that objective. However, the Continuation Agreement has not been performed or enforced, and defendants do not seek its enforcement. Therefore we conclude that the Continuation Agreement has no independent contractual significance apart from its actual fulfillment. It is only in the context of the fulfilled agreement that the question of waiver of the right to partition can be an issue. We thus conclude that no contractual waiver can be inferred or implied from the unperformed Continuation Agreement.

We turn to whether, apart from any contractual agreement, defendants have nonetheless established that plaintiffs voluntarily and intentionally relinquished their statutory right to seek partition. *See Bennett v. Farmers Ins. Co.*, 332 Or 138, 26 P3d 785 (2001); *Coast Range Conifers v. Board of Forestry*, 189 Or App 531, 76 P2d 1148 (2003), *rev allowed*, 337 Or 476 (2004). Contrary to plaintiffs' contention, it is possible to waive a statutory right to partition, just as it is possible to waive other statutory rights. *See, e.g., Sheldon v. Sheldon*, 163 Or App 256, 265, 987 P2d 1229 (1999) (waiver of a statutory right to take elective share); *State v. Hunter*, 316 Or 192, 850 P2d 366 (1993) (waiver of statutory right to speedy trial); *Lane Education Service Dist. v. Swanson*, 71 Or App 328, 692 P2d 622 (1984) (waiver of statutory right of recall). As with contractual waiver, the waiver of a statutory right is an intentional relinquishment or abandonment of a known right or privilege. *State v. Rogers*, 330 Or 282, 4 P3d

1261 (2000). "To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *McMillan v. Montgomery et al.*, 121 Or 28, 32, 253 P 879 (1927). Here, the evidence does not establish waiver. The Continuation Agreement on which defendants rely for the source of the waiver does not discuss partition or mention a waiver of the beneficiaries' right to seek partition the property. Plaintiffs testified that they did not contemplate the issue of partition when they signed the Continuation Agreement. We conclude that there was no clear and unequivocal act by plaintiffs showing an intention to waive the right to partition.

In *Waterway Terminals*, the Supreme Court said that, in the absence of an express agreement, a waiver will not be implied contrary to the intention of the party whose rights would be affected unless that party's conduct has led the opposite party, to its prejudice, to believe that a waiver was intended or consented to. 242 Or at 26-27. Even assuming that a waiver could be implied in these circumstances, defendants are not in a position to complain because they have not relied on or changed their position as a result of plaintiffs' conduct. We therefore hold that the trial court erred in concluding that plaintiffs have waived their right to seek partition of the timberland. In light of our holding, we do not address plaintiffs' remaining assignments of error.

Reversed and remanded.